**No. 22-1814**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DAVINA RICKETTS,

*Plaintiff-Appellant*,

v.

WAKE COUNTY PUBLIC SCHOOL SYSTEM, WCPSS; WAKE COUNTY BOARD OF EDUCATION; KEITH SUTTON, current Board Member; CHRISTINE KUSHNER, current Board Member; JAMES MARTIN, current Board Member; ROXIE CASH, current Board Member; MONIKA JOHNSON-HOSTLER, current Board Member; LINDSAY MAHAFFEY, current Board Member; TOM BENTON, former Board Member, in his individual capacity; BILL FLETCHER, former Board Member, in his individual capacity; SUSAN EVANS, former Board Member, in her individual capacity; KEVIN HILL, former Board Member, in his individual capacity; JAMES MERRILL, former Superintendent, in his individual capacity; CATHY MOORE, former Deputy Superintendent for School Performance and current Superintendent, in her individual capacity; MARVIN CONNELLY, former Chief of Staff, in his individual capacity; DANNY BARNES, former Area Superintendent, in his individual capacity; RODNEY TRICE, Assistant Superintendent for Equity Affairs, in his individual capacity; SCOTT LYONS, former Principal of Enloe and current Principal of Heritage High School, in his individual capacity; MONICA SAWYER, Asst. Principal of Enloe High School, in her individual capacity; GEORGE BARILICH, 2016 Student Council Election Advisor and current Enloe teacher, in his individual capacity; TRUDY PRICE-ONEIL, Editor of Enloe newspaper, in her individual capacity,

*Defendants-Appellees*.

On Appeal from the United States District Court for the Eastern District of North Carolina at Raleigh, No. 21-0049 (Hon. Louise Wood Flanagan)

### OPENING BRIEF OF APPELLANT DAVINA RICKETTS

|  |  |
|---|---|
|  | Alexander G. Siemers |
|  | LATHAM & WATKINS LLP |
|  | 555 Eleventh Street, NW, Suite 1000 |
|  | Washington, DC 20004 |
| April 10, 2024 | (202) 637-2200 |

*Counsel for Appellant*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF JURISDICTION...................................................... 1

ISSUES PRESENTED ......................................................................... 1

INTRODUCTION ................................................................................ 2

STATEMENT OF THE CASE .............................................................. 4

    A.    Factual Background........................................................... 4

        1.    The Lead-Up To The Student Council Election ......................... 4

        2.    The Day Of The Student Council Election ................................. 6

        3.    Events Following The Student Council Election....................... 8

    B.    Procedural History.......................................................... 15

SUMMARY OF THE ARGUMENT ..................................................... 17

STANDARD OF REVIEW .................................................................. 20

ARGUMENT ....................................................................................... 21

    A.    The District Court Failed To Liberally Construe Davina's Complaint ........................................................................ 21

    B.    Davina Adequately Pleaded A Title VI Discrimination Claim .......... 26

        1.    Davina Plausibly Alleged That She Suffered Severe And Pervasive Racial Harassment ...................................................... 28

        2.    Davina Plausibly Alleged That The School Had Actual Notice Of The Racial Harassment And Substantial Control Over The Harassers And The Context ...................................... 35

        3.    Davina Plausibly Alleged That The School Acted With Deliberate Indifference To The Racial Harassment ................. 40

**Page**

C.    Davina Adequately Pleaded A Title VI Retaliation Claim .................45

    1.    Davina Plausibly Alleged That She Engaged In Protected Activity ...........................................................................................45

    2.    Davina Plausibly Alleged That She Suffered Materially Adverse Actions ....................................................................46

    3.    Davina Plausibly Alleged That A Causal Connection Existed Between The Protected Activity And The Adverse Actions ..................................................................................49

D.    Davina Adequately Pleaded An Equal Protection Claim...................51

    1.    Davina Adequately Pleaded An Equal Protection Claim Against Several Individual Defendants ...................................51

    2.    Davina Adequately Pleaded An Equal Protection Claim Against The Board ...................................................................54

CONCLUSION .................................................................................................56

REQUEST FOR ORAL ARGUMENT ..................................................................57

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adams v. Demopolis City Schools*,
  80 F.4th 1259 (11th Cir. 2023) ....................................................27, 29

*Alberti v. Rector & Visitors of the University of Virginia*,
  65 F.4th 151 (4th Cir. 2023) ...................................................50

*Basta v. Novant Health Inc.*,
  56 F.4th 307 (4th Cir. 2022) ...................................................40

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................22

*Blunt v. Lower Merion School District*,
  767 F.3d 247 (3d Cir. 2014) ...................................................27

*Bryant v. Independent School District No. I-38 of Garvin County*,
  334 F.3d 928 (10th Cir. 2003) ....................................................27, 41

*Burlington Northern & Santa Fe Railway v. White*,
  548 U.S. 53 (2006)...................................................46

*Davis v. Monroe County Board of Education*,
  526 U.S. 629 (1999)...............................................................*passim*

*Davison v. Randall*,
  912 F.3d 666 (4th Cir. 2019) ...................................................20

*DePaola v. Clarke*,
  884 F.3d 481 (4th Cir. 2018) ....................................................20, 22

*DiStiso v. Cook*,
  691 F.3d 226 (2d Cir. 2012) ...................................................51

*Doe v. Fairfax County School Board*,
  1 F.4th 257 (4th Cir. 2021) ............................................28, 34, 35, 36

*Edwards v. City of Goldsboro*,
  178 F.3d 231 (4th Cir. 1999) ....................................................23, 54

**Page(s)**

*EEOC v. Central Wholesalers, Inc.*,
573 F.3d 167 (4th Cir. 2009) ................................................................32

*Erickson v. Pardus*,
551 U.S. 89 (2007)............................................................3, 20, 21, 22, 23

*Estelle v. Gamble*,
429 U.S. 97 (1976)...............................................................3, 20, 22

*Farmer v. Brennan*,
511 U.S. 825 (1994)................................................................40

*Fauconier v. Clarke*,
966 F.3d 265 (4th Cir. 2020) ...........................................................22, 24

*Feminist Majority Foundation v. Hurley*,
911 F.3d 674 (4th Cir. 2018) ...........................................................*passim*

*Fennell v. Marion Independent School District*,
804 F.3d 398 (5th Cir. 2015) ................................................................27

*Fitz v. Terry*,
877 F.2d 59, 1989 WL 64157 (4th Cir. 1989)...........................................22, 25

*Fitzgerald v. Barnstable School Commission*,
555 U.S. 246 (2009)................................................................54

*Franklin v. Rose*,
765 F.2d 82 (6th Cir. 1985) ................................................................22

*Gebser v. Lago Vista Independent School District*,
524 U.S. 274 (1998)................................................................35

*Goines v. Valley Community Services Board*,
822 F.3d 159 (4th Cir. 2016) ................................................................5

*I.M. v. Granville County Schools*,
2022 WL 3441835 (E.D.N.C. Aug. 16, 2022)................................................29

*Jennings v.University of North Carolina*
482 F.3d 686 (4th Cir. 2007) ................................................................28, 32

**Page(s)**

*Jones v. Chandrasuwan,*
   820 F.3d 685 (4th Cir. 2016) ...................................................51

*Laurent-Workman v. Wormuth,*
   54 F.4th 201 (4th Cir. 2022) ..................................25, 32, 48

*Lee ex rel. E.L. v. Lenape Valley Regional Board of Education,*
   2009 WL 900174 (D.N.J. Mar. 31, 2009) ...........................55

*M.D. v. School Board of the City of Richmond,*
   560 F. App'x 199 (4th Cir. 2014) ......................................28

*Martin v. Duffy,*
   858 F.3d 239 (4th Cir. 2017) .............................................24

*Menzia v. Austin Independent School District,*
   47 F.4th 354 (5th Cir. 2022) .............................................44

*Mihnovich v. Williamson County Board of Education,*
   2014 WL 5586198 (M.D. Tenn. Nov. 3, 2014)....................29

*Neuman v. Georgetown Independent School District,*
   2024 WL 535884 (W.D. Tex. Feb. 8, 2024),
   *appeal docketed,* No. 24-50120 (5th Cir. Feb. 22, 2024)..................29

*Pendleton v. Jividen,*
   2024 WL 1183535 (4th Cir. Mar. 20, 2024) .......................24

*Perkins v. International Paper Co.,*
   936 F.3d 196 (4th Cir. 2019) .............................................32

*Peters v. Jenney,*
   327 F.3d 307 (4th Cir. 2003) ..................................45, 46, 49

*S.B. ex rel. A.L. v. Board of Education of Harford County,*
   819 F.3d 69 (4th Cir. 2016) .........................40, 41, 42, 45

*Simmons v. United States,*
   142 S. Ct. 23 (2021)...........................................................22

*Spell v. McDaniel,*
   824 F.2d 1380 (4th Cir. 1987) ...........................................54

**Page(s)**

*Starbuck v. Williamsburg James City County School Board*,
   28 F.4th 529 (4th Cir. 2022) ..........................................................23, 25

*Steele v. Schafer*,
   535 F.3d 689 (D.C. Cir. 2008) ...............................................................48

*Wall v. Rasnick*,
   42 F.4th 214 (4th Cir. 2022) ...................................................................23

*Weatherholt v. Bradley*,
   316 F. App'x 300 (4th Cir. 2009) ...........................................................44

*Wellington v. Daniels*,
   717 F.2d 932 (4th Cir. 1983) ..................................................................54

*Williams v. Port Huron School District*,
   455 F. App'x 612 (6th Cir. 2012) ...........................................................52

*Zeno v. Pine Plains Central School District*,
   702 F.3d 655 (2d Cir. 2012) ..............................................27, 34, 37, 40, 43

## CONSTITUTIONAL, STATUTORY, AND
## REGULATORY PROVISIONS

U.S. Const. amend. XIV, § 1 .......................................................................51

28 U.S.C. § 1291 ...........................................................................................1

28 U.S.C. § 1331 ...........................................................................................1

42 U.S.C. § 1983 ...........................................................................................1

42 U.S.C. § 2000d...................................................................................1, 27

34 C.F.R. § 100.3(b)(1)(iv) ........................................................................27

34 C.F.R. § 100.7(e)....................................................................................45

**Page(s)**

## OTHER AUTHORITIES

Andrea Blanford, *Wake County school principal responds to racist videos*, 11 Eyewitness ABC News (Jan. 29, 2018), https://abc11.com/wake-county-schools-racist-videos-broughton-high-school-raleigh/3003473/ ............................................................ 14

Fed. R. Civ. P. 8(a)(2) ............................................................................... 21

Fed. R. Civ. P. 8(e) ................................................................................... 20

Fed. R. Civ. P. 10(c) .................................................................................... 5

Alex Granados, *Wake County Public Schools leaders respond to 'racist, vile, and thoughtless statements' made by staff and students*, Education NC (June 1, 2020), https://www.ednc.org/wake-county-public-schools-leaders-respond-to-racist-vile-and-thoughtless-statements-made-by-staff-and-students/ ...................................................................................... 14

Reema Khrais, *Wake County Schools Accused Of 'Racist,' 'Unfair' Policing Practices In Complaint* (Jan. 23, 2014), https://www.wunc.org/education/2014-01-23/wake-county-schools-accused-of-racist-unfair-policing-practices-in-complaint .................... 14

Ken Smith, *Family upset at inaction by Wake schools over racist chat group*, WRAL News (Oct. 10, 2019), https://www.wral.com/story/family-upset-at-inaction-by-wake-schools-over-racist-chat-group/18690153/ ........................................ 14

Christina Sterbenz, *How racist bullying is tearing apart a school district in the South*, VICE News (Jan. 12, 2018), https://www.vice.com/en/article/j5vbg7/how-racist-bullying-is-tearing-apart-a-school-district-in-the-south .................................................. 14, 55

WRAL News, *WCPSS officials concerned racial incidents are 'beginning to define' district* (Mar. 16, 2017), https://www.wral.com/wcpss-officials-concerned-racial-incidents-are-beginning-to-define-district/16588702/ ................................................ 14, 54

**Page(s)**

5B Charles Alan Wright & Arthur R. Miller, Federal Practice and
Procedure (4th ed. 2024)......................................................................22

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331 because this case arises under Title VI, 42 U.S.C. § 2000d et seq., and 42 U.S.C. § 1983.  On January 3, 2022, the district court granted Defendants' motion to dismiss and gave Plaintiff 30 days to file a motion for leave to amend, JA087-088, and on February 2, 2022, Plaintiff filed that motion.  JA089-091.  On July 6, 2022, the district court denied Plaintiff's motion for leave to amend and entered final judgment dismissing the action in its entirety.  JA250-251.  Plaintiff timely filed a notice of appeal on August 1, 2022.  JA252-253.  This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED

1.    Whether Plaintiff adequately pleaded a Title VI discrimination claim for deliberate indifference to student-on-student racial harassment.

2.    Whether Plaintiff adequately pleaded a Title VI retaliation claim.

3.    Whether Plaintiff adequately pleaded an Equal Protection claim.

**INTRODUCTION**

Davina Ricketts ran for student council hoping to remedy its lack of diversity and change her high school's culture. Instead, announcing her candidacy kicked off a campaign of racial harassment and cyberbullying at the hands of her peers while teachers and administrators failed to intervene. Other students opposed her candidacy, tore down her campaign materials, and excluded her from mock polls. On the day of the election, they excluded her and other African-American candidates from the actual ballot too. When she raised the possibility of discrimination, administrators waved their hands, called it a mistake, and required all candidates to requalify and re-campaign for a reelection to be held weeks later—which both turned up the temperature in an already heated environment and further emboldened her harassers.

Two bomb threats followed, and her materials were torn down once again. Both in the hallways and online, Davina's peers harassed and cyberbullied her—by, for instance, calling Davina an "angry Black girl" and blaming her for causing a reelection. The school knew that Davina was being harassed and yet failed to step in. It even greenlit an issue of the school newspaper, passed off as a gag for April Fool's Day, that both mocked accusations of discrimination by doubting the "sanity and sobriety of the people making these claims" and joked about the "diversity" that the school "is so proud of." And when the harassment continued for months,

administrators did nothing.  Beyond that, Davina ended up missing out on letters of academic reference, losing a place on the varsity cheerleading team, and being denied an International Baccalaureate diploma.  All this led to fainting episodes, a concussion, trouble learning, and suicidal thoughts.

Proceeding pro se, Davina brought claims for discrimination, retaliation, and violation of her equal protection rights.  The district court dismissed her claims and then denied her motion for leave to amend on futility grounds.

In denying leave to amend, the district court erred.  Pro se complaints—especially those raising civil rights issues—must "'be liberally construed,' and a 'pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Yet the district court acknowledged only briefly that Davina was proceeding pro se.  And instead of construing her complaint liberally, the court nitpicked Davina's allegations at every turn and drew inferences *against* her.  For example, it called her allegations of harassment and cyberbullying "[c]onclusory" and then found that "*the* reasonable inference" was that allegations of "'nasty racial comments'" amounted only to "'simple acts of teasing and name-calling.'"  JA074 (emphasis added).  The district court's failure on this front tainted its entire analysis.

3

Applying the correct standard, Davina adequately pleaded each of her claims. On her Title VI discrimination claim for deliberate indifference to student-on-student racial harassment, Davina plausibly alleged that she was a student at an educational institution receiving federal funds; that she suffered severe and pervasive harassment; that the school had actual notice of the harassment and substantial control over both the harassers and the context; and that the school acted with deliberate indifference. On her Title VI retaliation claim, Davina plausibly alleged that she engaged in protected activity and suffered materially adverse actions causally connected to that protected activity. And on her equal protection claim, Davina plausibly alleged that she was subjected to discriminatory peer harassment, and that several individuals (due to their failure to stop that harassment or attempts to downplay it) and the Board (due to its custom of ignoring discrimination) were liable as a result.

This Court should reverse the judgment below and remand with instructions to grant Davina leave to amend her complaint.

## STATEMENT OF THE CASE

### A.    Factual Background

#### 1.    The Lead-Up To The Student Council Election

In February 2016, Davina Ricketts was a sophomore at William G. Enloe High School (Enloe)—part of the Wake County Public School System, which is governed

by the Wake County Board of Education (Board).  JA104-105.[1]  Student council elections were approaching, to be held on March 4.  JA114.  Enloe principal Scott Lyons appointed George Barilich, an English teacher, to oversee the election with assistance from Monica Sawyer, Enloe's assistant principal.  *Id.*  Passionate about speaking out against racism and discrimination, and wanting to change Enloe's culture and the student council's "lack[ of] diversity," Davina declared her candidacy for junior class vice president.  JA111; JA189; *see also* JA136 (Davina was "vocal against racism at Enloe"); JA180 (Davina was a "Junior VP candidate").  Three other African-American students who were sophomores also declared their candidacy.  JA114.  "[I]nstantly," that put a target on their backs.  JA111.

Barilich delegated his oversight duties to members of the student council who "were opposed to" Davina's candidacy.  JA114-115.  In the days leading up to March 4, student council members created Twitter accounts purporting to represent Enloe. JA115, JA132-133.  These accounts posted polls asking who students would vote for in the upcoming election along with endorsements for particular candidates. JA115.  All four of the African-American students who were running on the junior

---

[1]  Because Davina is challenging the district court's denial of leave to amend, the facts here are drawn from Davina's proposed second amended complaint, JA103-158, and the accompanying exhibits, JA160-224.  These exhibits are incorporated by reference and should be taken as true at this stage.  *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166-67 (4th Cir. 2016); *see also* Fed. R. Civ. P. 10(c).

ballot were excluded from the polls, and none of them received an endorsement. JA115. When Davina confronted student council members about this, one apologized on behalf of the entire student council, noting that Davina was "passionate about promoting racial equality and I think that is something our current student council lacks." JA117.

At that same time, Davina's campaign materials (posters and backpack tags) were "defaced, ripped, and thrown in the atrium and cafeteria," while "no Caucasian candidates suffered such treatment." JA115-116. This was "a deliberate and targeted destruction" of Davina's (and two other African-American students') materials. JA133. Enloe administrators were aware of these acts but did not address the situation. JA116, JA137.

The March 4 election was unexpectedly suspended and postponed to March 7. JA116. The student council vice president claimed that this was due to technical difficulties, while Barilich claimed it was because the website was not paid for, and he ended up purchasing a new website for hosting the election. JA116.

## 2.    The Day Of The Student Council Election

On March 7, the day of the election finally arrived. But when Davina went to vote, her name was nowhere to be found on the junior ballot. JA117. In fact, "the names of the four and only African-American candidates on the Junior Class election ballot" were excluded from that ballot—just like in the polls leading up to the

election.  JA117-118.  Davina's name incorrectly appeared on the sophomore ballot instead.  JA115, JA117.

That morning, Davina reported this exclusion to Sawyer and Barilich, saying that it appeared her classmates were discriminating against her and other African-American candidates.  JA118.  They did not comment and refused to talk to two of the other candidates who had been excluded.  *Id.*  Shortly thereafter, Barilich told all of the candidates that some candidates had been excluded because of "miscommunication between [the] two websites" and that the original was malfunctioning.  *Id.*  And that official statement from Barilich "marked the start" of the racial harassment that followed.  *Id.*

Davina's parents and others contacted superintendent James Merrill's office, but Merrill refused to meet.  *Id.*  Davina's parents also emailed Lyons asking for a meeting, but he too declined to meet and responded that nine students had been left off the ballot or put on the wrong ballot.  JA118-119.  That day, Lyons called those nine students to his office and told them that the cause of the incident "was due to something wrong with the website plus 'some oversight'" issues.  JA119.

Later on March 7 and without consulting the excluded candidates, Lyons refused the suggestion of adding the excluded names to the correct ballots and revoting.  JA119.  Instead, he announced that a new election would occur on March 24 and that anyone who wanted to run again needed to requalify and re-campaign.

*Id.* None of the candidates supported this requirement—many of them did not want to repeat the process, and all of the students preferred a revote. *Id.* Imposing this requirement and prolonging the process angered many of Davina's classmates and fellow candidates; Davina became the "prime target" for that anger because she was "the only one out of the four excluded African-American students" who ran for reelection. *Id.*

### 3.    Events Following The Student Council Election

Many students (including the candidates) and some parents "immediately started cyberbullying" Davina, labeling her an "angry Black girl[]" and blaming her for "overreacting to a 'technical glitch' and calling it discrimination." *Id.* In addition, students complained that "Black kids caused a reelection," posted "nasty, racially biased comments" online, and said that "no one was going to vote for a bunch of angry Black girls." JA120-121.

On March 8—the day after the initial election—a student who was frustrated by the reelection requirement made a bomb threat at Enloe. JA122, JA134. A second bomb threat by a student followed nine days later. JA122. Lyons dismissed the bomb threats as pranks and did not attempt to discipline these students. JA122, JA134.

On March 9, the local news ran a story regarding the Enloe student council election and interviewed Davina's mother (as well as a parent of another excluded

8

student).  Those parents said that "they believe the color of their children's skin led to the exclusion" and noted that "the African-American kids are being harassed and ostracized" for raising the possibility of discrimination.  JA173.  At this point, the school district said the exclusion was "human error" and Lyons said this "obviously is a mistake."  *Id.*[2]

In the following days, both a civil-rights advocate and a local NAACP leader contacted administrators and urged them to take action, but no one responded to these requests.  JA126.  Davina's mother also let administrators know that the "African-American students are currently being blamed for the restart of the entire process" and were being "targeted."  JA125; JA138 ("multiple complaints" sent to administrators and Lyons).  Administrators were also informed that the excluded candidates "are being accused" of causing a reelection and that Davina and others were "being harassed."  JA181-182.  Lyons responded that he had "not received any reports of harassment" and asked Davina "to come see me or another administrator to discuss this so that we can follow up."  JA187.  Davina's mother replied that the

---

[2]     In the public comments, a user who said that their children went to Enloe said that the story "could actually lead to more problems at Enloe."  JA174.  Other comments included the following: "black people were better off … during segregation"; "African?  I highly doubt any of these students are from Africa"; "nothing is really expected of the black kids, and anything they do wrong is 'explained'"; and "[w]ay to go parents (and of course I mean mothers, since there are obviously no daddies in sight)."  JA174-176.

harassment was continuing and that Lyons should take initiative rather than expecting students to come to him. JA188-189. Lyons did not follow up.

In the lead-up to the reelection, Davina continued to face harassment from her peers. On top of the cyberbullying and name-calling, her posters and backpack tags were yet again "torn off the wall and shredded," while "Caucasian candidates' materials remained intact." JA122. Students who had previously supported Davina no longer did so, and Davina became fearful of going to school because of the harassment. *Id.* Beyond that, Davina's parents received a letter from Lyons indicating Davina had 15 days of absences and therefore did not qualify to participate in certain extra-curricular activities, including the student-council election. JA151. Her parents had to explain that these were excused absences and provide medical notes to reclaim her right to participate in the reelection. *Id.*

During this same time frame, Davina asked two teachers for letters of academic reference to attend a summer medical program in Paris. JA152. The teachers refused, and one of them ignored Davina in the hallway. *Id.* This sort of request was frequently granted for Caucasian students. JA182, JA191.

Also during this time, the April edition of Enloe's newspaper came out. JA113. The newspaper's editor was Enloe teacher Trudy Price-O'Neil. JA106. Couched as an April Fool's issue, the newspaper contained a number of racial comments. For example, the newspaper included headlines that encouraged students

to "Celebrate White History Month" and that issued "[a] call for secession." JA163-164. In addition, an article about Lyons (here, "DaLyon"), discussed Lyons "cop[ing] with surviving in Southeast Raleigh"—a predominantly African-American neighborhood—"as a white man" who received "ill-treatment … when trying to give out his earlier mixtapes at the nearby Cookout." JA169.

The newspaper also included several articles alluding to the events surrounding the student council election. First, the front page article discussed a student body president who "promise[d] to make Enloe pretty good again" and included the line "[t]hey take our whites." JA161. Second, the newspaper included an article titled "Oscars falsely accused of discrimination: In reality, the BET awards are the real culprits of exclusion." JA163. The article mentioned the "recent uproar" surrounding an alleged "lack of representation," doubted the "sanity and sobriety of the people making these claims," and stated that there are "several questions about the legitimacy of black actors' complaints." *Id.* Third, the newspaper included a mock interview with an "Enloe cockroach" from "Southeast Raleigh" (again, a predominantly African-American neighborhood). JA168. One question was how "your demographic contributes to the school community," and the answer was "I've always said that we represent such a large portion of the school population, and we only add to the diversity that Enloe is so proud of. But we're drastically underrepresented in student government! That's why today, I am announcing my

campaign for next year's Student Council Executive Committee! I'm getting a head start because it takes a while for me to make backpack tags." *Id.*

The reelection occurred on March 24, and Davina ultimately did not win a seat on the student council. JA065. Though the election had ended, the harassment continued both at school and online. JA133-135. And the events surrounding the student council election affected Davina's physical health and mental well-being. She had multiple "incidents of fainting" (one of which caused a concussion) and even suffered from "suicidal thoughts." JA135; *see* JA157. The psychological harm, "anxiety, and emotional distress" also had an impact on Davina's education, making it more difficult for her to learn. JA157-158. And due to her concussion, Davina missed a number of classes. Even though these absences were excused, she experienced a "sudden and drastic drop[] in grades" in some classes. JA153.

Following the student council election, Davina was not reselected for the varsity cheerleading team. JA153. Though she had been on the team for two years, the coach selected a junior varsity student in her place. *Id.* At graduation, Davina was denied an International Baccalaureate diploma, with her essay scored one point short of the requirements. JA152. When her parents reached out to the organization, a representative said that they would investigate but ultimately referred Davina back to Enloe. Enloe staff summarily stated that the essay was scored by an "unknown individual living in another country." *Id.* And from when the election occurred to

when she graduated in 2018, Davina suffered from harassment and a hostile environment at Enloe. JA135. No one intervened. *Id.*; *see also, e.g.*, JA146-147.

During a June 2016 board meeting, the Board was told about the cyberbullying and how discrimination complaints were ignored. JA126; *see also* JA135-136; JA191. No one responded at that time. JA126. Later, when discussing similar issues, some board members stated "[t]hat's just the culture" of the school district. JA140.

At the time of the election, the Board had policies against discrimination, harassment, and bullying which covered "cyber-bullying and cyber-harassment" and required employees to "report any actual or suspected violations of this policy," JA109. Those policies also required the school to "impartially, promptly, and thoroughly investigate the complaint," stating that the investigator "shall interview" the complainant, the alleged perpetrators, and witnesses. JA110 (emphasis omitted). A year later, these policies were enforced at another school within the Wake County school district when three students were suspended for sharing a private video in which they made "derogatory statements against different ethnic and racial groups." JA139.

Other race-related events also occurred within Wake County schools. Legal Aid of North Carolina filed numerous discrimination complaints, and much of the African-American community voiced their dissatisfaction with the district. JA140.

13

That included a lawsuit about racial disparities in the district's policing practices. JA112; JA140; *see* Reema Khrais, *Wake County Schools Accused Of 'Racist,' 'Unfair' Policing Practices In Complaint* (Jan. 23, 2014), https://www.wunc.org/education/2014-01-23/wake-county-schools-accused-of-racist-unfair-policing-practices-in-complaint.

Due to a number of race-related incidents, Rodney Trice (Assistant Superintendent for Equity Affairs) said in March 2017 that racial tensions and troubles were "beginning to define us as a school system." WRAL News, *WCPSS officials concerned racial incidents are 'beginning to define' district* (Mar. 16, 2017), https://www.wral.com/wcpss-officials-concerned-racial-incidents-are-beginning-to-define-district/16588702/.[3]

---

[3]   Other publicly reported incidents in surrounding years included a white student bullying an African-American student by calling him "a fuckin' black piece of shit"; students "hanging a black teddy bear in a noose" on a high-school building; a video making offensive comments about "all the brown people" at Enloe; a student group chat that included racial slurs and "#bringslaveryback"; and a staff member saying "[h]ave the fire department turn on the water" with respect to protestors in Raleigh following George Floyd's death. Christina Sterbenz, *How racist bullying is tearing apart a school district in the South*, VICE News (Jan. 12, 2018), https://www.vice.com/en/article/j5vbg7/how-racist-bullying-is-tearing-apart-a-school-district-in-the-south; Andrea Blanford, *Wake County school principal responds to racist videos*, 11 Eyewitness ABC News (Jan. 29, 2018), https://abc11.com/wake-county-schools-racist-videos-broughton-high-school-raleigh/3003473/; Ken Smith, *Family upset at inaction by Wake schools over racist chat group*, WRAL News (Oct. 10, 2019), https://www.wral.com/story/family-upset-at-inaction-by-wake-schools-over-racist-chat-group/18690153/; Alex Granados, *Wake County Public Schools leaders respond to 'racist, vile, and thoughtless statements' made by staff and*

**B.    Procedural History**

In November 2016, Shirley Tang (a civil-rights advocate for students) filed a discrimination complaint with the Department of Education's Office for Civil Rights (OCR) on behalf of Davina and three other students.  JA126.  In the course of responding to that complaint, the school district disclosed that it had conducted an internal investigation on the ballot exclusion led by Trice in May 2016.  JA127.

During interviews conducted by OCR, Barilich stated that the election exclusion was caused by "student error"; Lyons responded that he did not know what had caused it.  JA123.  The school district also offered other explanations, claiming that the excluded students "registered to run for [the] election later than other students" and that one student accidentally provided the wrong list to another. JA123-124; JA201.  Ultimately, OCR dismissed the complaint.  JA128.

On February 2, 2021, Davina brought this action pro se in the Eastern District of North Carolina against the Board and various individuals (Board members, administrators, and teachers).  JA225-226.  In an amended complaint filed shortly thereafter, Davina asserted claims under Title VI for discrimination and retaliation and under 42 U.S.C. § 1983 for violation of her equal protection rights under the Fourteenth Amendment.  *See* JA011-059.

---

*students*, Education NC (June 1, 2020), https://www.ednc.org/wake-county-public-schools-leaders-respond-to-racist-vile-and-thoughtless-statements-made-by-staff-and-students/.

As relevant here, Defendants moved to dismiss for failure to state a claim. The district court granted Defendants' motion to dismiss. *See* JA087-088. On the Title VI discrimination claim, the district court held that Davina did not sufficiently allege "severe, pervasive, and objectively offensive" harassment. JA071. On the Title VI retaliation claim, the district court concluded that Davina "misunderst[ood] the relevant pleading requirements" and "fail[ed] to raise a reasonable inference that any conduct directed towards plaintiff was materially adverse or that it was a result of her protected activity." JA077-078. And on the equal protection claim, the district court held that the individual defendants did not have the requisite discriminatory intent and that the Board had no persistent practice of ignoring discrimination. JA080-087.

The district court gave Davina 30 days to file a motion for leave to amend her complaint and a proposed amended complaint. JA088. At that time, it "notifie[d]" Davina "that any proposed amended complaint will be considered plaintiff's complaint in its entirety, and the court will not review plaintiff's prior filings to glean any misplaced claims." *Id.*

Davina timely filed a motion for leave to amend, a proposed amended complaint asserting the same claims, and several attached exhibits. JA226; *see* JA103-224. Defendants opposed Davina's motion, asking the district court to deny leave to amend and dismiss all of her claims with prejudice.

The district court denied Davina's motion for leave to amend, holding that her "proposed amendment would be futile in whole." JA248-249. The district court "focus[d] on the material factual differences between the dismissed complaint and the proposed amended complaint" and held that its "prior analysis stands and obviates the need to restate the deficiencies underlying plaintiff's claims as pleaded." JA235-236; *see also, e.g.*, JA237 ("[T]he nucleus of operative facts regarding her Title VI claim as it relates to those incidents remains the same. And so does the court's analysis."). It also held that Davina's new allegations did not alter its earlier conclusions. *See* JA239-244. The district court therefore directed the clerk to close her case and issued a final judgment. JA248-249; *see* JA251.[4]

## SUMMARY OF THE ARGUMENT

The district court was wrong to deny Davina leave to amend her complaint. Liberally construed, she adequately pleaded a Title VI discrimination claim, a Title VI retaliation claim, and an equal protection claim.

A.    The district court failed to liberally construe Davina's pro se complaint and draw all reasonable inferences in her favor. Pro se complaints—especially those raising civil rights issues—must be liberally construed, which means holding them

---

[4]    On appeal, Davina does not challenge the district court's holdings that the Board is the proper party for her Title VI claims, JA235-236, or that her equal protection claims against certain individual defendants mentioned only in the case should be dismissed, JA245.

to less stringent standards than pleadings drafted by lawyers. That did not happen here. The district court barely acknowledged that Davina was proceeding pro se; repeatedly faulted her for inartful pleading; specifically disclaimed responsibility to examine whether Davina would be entitled to relief under any legal theory plausibly alleged in her complaint; and never stepped back to consider the complaint as a whole. Those failures impacted its whole analysis. This Court should apply the correct standard and find that Davina adequately pleaded each of her claims.

B.     Davina adequately pleaded a Title VI discrimination claim for deliberate indifference to student-on-student racial harassment. Davina was a student at an educational institution receiving federal funds. She also suffered severe and pervasive harassment from shortly after she announced her candidacy for student council to when she graduated. Students opposed to Davina's candidacy tore down her campaign materials, excluded her from mock polls, and then excluded her from the actual ballot. Once she raised the possibility of discrimination, students harassed and cyberbullied her, again tore down her campaign materials, issued bomb threats, and published "jokes" targeting her in the school newspaper. And as a result of this harassment, Davina was deprived of an academic environment free from racial hostility.

The school had actual notice of the harassment and had substantial control over both the harassers and the context. Davina notified teachers and administrators

of the discrimination. So did her mother, and so did the local news. The school had substantial control over Davina's harassers because of its disciplinary authority. The school also had substantial control over the context because much of the harassment occurred during school hours and on school grounds—and even the online harassment concerned what happened on campus and specifically targeted Davina.

Lastly, the school acted with deliberate indifference to the harassment. For many of the incidents, no one from the school intervened at all. Even when the school acted, it at most responded with a short-term countermeasure, undertook a half-hearted investigation, or merely offered to listen. And forcing the candidates to redo the entire election process provoked even more harassment.

C.     Davina also adequately pleaded a Title VI retaliation claim. She engaged in protected activity when she opposed the ballot exclusion and raised the possibility of discrimination. She suffered materially adverse actions, both in the form of student-on-student retaliatory harassment and in the form of effects on her grades, extracurricular activities, and graduation awards. And those adverse actions were causally connected to Davina's complaints of discrimination.

D.     Finally, Davina adequately pleaded an equal protection claim, both against several individual defendants and against the Board. For the individuals, Davina was subjected to discriminatory peer harassment; several administrators or teachers knew about the conduct and yet responded with deliberate indifference; and

they either made no effort to stop the harassment, downplayed particular incidents, or even condoned what was happening. For the Board, its custom of ignoring discrimination is shown by its deliberate indifference to harassment.

## STANDARD OF REVIEW

This Court "review[s] de novo a district court's denial of leave to amend on the basis of futility." *Davison v. Randall*, 912 F.3d 666, 690 (4th Cir. 2019). Because futility is measured by whether the claim would "have survived a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)," *id.*, this Court is "obliged to accept" the proposed complaint's "factual allegations as true and draw all reasonable inferences in favor of the plaintiff[]," *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 685 (4th Cir. 2018); *see Davison*, 912 F.3d at 690 ("'Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards.'").

In addition, "[a] document filed pro se is 'to be liberally construed,' and a 'pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson*, 551 U.S. at 94 (quoting *Estelle*, 429 U.S. at 106); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). That is "particularly" true "if the pro se plaintiff raises civil rights issues." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018).

## ARGUMENT

The district court failed to liberally construe Davina's complaint and draw all reasonable inferences in her favor. That failure affected its entire analysis. Under the proper approach, Davina adequately pleaded a Title VI claim for discrimination, a Title VI claim for retaliation, and an equal protection claim. This Court should reverse the judgment below and remand with instructions to grant Davina leave to amend her complaint.[5]

### A.     The District Court Failed To Liberally Construe Davina's Complaint

The district court failed to liberally construe Davina's complaint. Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That means "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93

---

[5]     Since Davina is challenging the district court's denial of leave to amend, this brief relies on her proposed second amended complaint. *See supra* at 5 n.1. Yet the district court's denial of leave to amend depended in large part on its earlier dismissal, holding that Davina's "proposed complaint still fails to state a claim under Title VI against defendant Board of Education and under § 1983 against all defendants" and that its "prior analysis stands and obviates the need to restate the deficiencies underlying plaintiff's claims as pleaded." JA236. Thus, both district court decisions are relevant to determining whether the district erred in denying leave to amend.

(2007) (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

That is already a "liberal pleading standard[]." *Id.* at 94. On top of that, "[a] document filed pro se is 'to be liberally construed,' and a 'pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). And "if the pro se plaintiff raises civil rights issues," liberal construction is "particularly" appropriate. *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018).

In practice, that means many federal courts, including this Court, "have adopted a more lenient attitude towards pro se plaintiffs on a Rule 12 motion than is accorded other plaintiffs." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (4th ed. 2024). Indeed, "[t]he appropriate liberal construction requires active interpretation in some cases." *Fitz v. Terry*, 877 F.2d 59, 1989 WL 64157, at *2 (4th Cir. 1989) (quoting *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985)). So even where a "'pro se complaint raising civil rights issues'" is "somewhat thin," there might nevertheless be allegations sufficient to state a claim. *Fauconier v. Clarke*, 966 F.3d 265, 276-79 (4th Cir. 2020).

Likewise, even a failure to "explain [an element] adequately may be proper cause for the court to provide clear guidance and an opportunity to remedy" the defect. *Simmons v. United States*, 142 S. Ct. 23, 25 (2021) (statement of Sotomayor,

J.).  And liberal construction also means that courts can "recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022); *see also Starbuck v. Williamsburg James City Cnty. Sch. Bd.*, 28 F.4th 529, 534 (4th Cir. 2022) ("[W]e 'must not dismiss [a civil rights] complaint, unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged.'" (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999))).

The district court did not liberally construe Davina's complaint.  Far from it. To start, the district court only briefly acknowledged that Davina was proceeding pro se.  *See* JA061 (noting that Davina "commenced this race discrimination action pro se"); JA226 (same).  And the court never mentioned the requirement to construe pro se complaints liberally, especially if they raise civil rights issues.  *See* JA065-066; JA234.

Instead, the district court reprimanded Davina for "misunderstand[ing] the relevant pleading requirements."  JA078.  And far from holding Davina to a "less stringent standard[]," the court repeatedly faulted Davina for "inartful[] plead[ing]." *Erickson*, 551 U.S. at 94.  To give just a few examples:  The court criticized Davina for "rely[ing] on speculation," JA084; *see* JA060-088 (using forms of "speculate" eight times); dismissed what it called "[c]onclusory assertions" of cyberbullying,

harassment, and Davina's resulting anxiety, JA074; and found that her complaint was "bereft of well-pleaded facts," JA247. The strict approach employed by the court below is the polar opposite of liberal construction. *Cf. Fauconier*, 966 F.3d at 277-79 (finding "somewhat thin" allegations to "sufficiently allege[] an equal protection claim" when "apply[ing] a liberal construction" to "pro se complaint").

The court also failed to notice some of the most relevant language from the school newspaper—including the headline about being "falsely accused of discrimination" (and statements doubting the "sanity and sobriety of the people" making claims of discrimination), and the statement by a "cockroach" from "Southeast Raleigh" about being "drastically underrepresented in student government." JA163; JA168. Fairly read, those statements take thinly veiled potshots at Davina. Yet the district court passed over them without mention.[6]

Beyond that, when dismissing Davina's complaint, the district court specifically said that "any proposed amended complaint will be considered

---

[6] While Davina did not include all of these statements in her first amended complaint, she attached the newspaper as an exhibit to her proposed second amended complaint. "[C]ourts routinely look beyond what pro se litigants identify as their 'complaint' and analyze the substance of any included documents in considering a motion to dismiss for failure to state a claim." *Pendleton v. Jividen*, 2024 WL 1183535, at *2 (4th Cir. Mar. 20, 2024); *see also Martin v. Duffy*, 858 F.3d 239, 244 n.1 (4th Cir. 2017). And the district court did consider *other* parts of the newspaper that were not in the complaint when it denied leave to amend. *See* JA231. That makes its failure of liberal construction stand out even more.

plaintiff's complaint in its entirety, and *the court will not review plaintiff's prior filings to glean any misplaced claims*." JA088 (emphasis added). That appears to disclaim an obligation to liberally construe Davina's complaint by refusing to countenance the possibility of "active interpretation." *Fitz*, 1989 WL 64157, at *2. The court effectively stated that it would *not* check whether "plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Starbuck*, 28 F.4th at 534. Yet the court *did* consider Davina's earlier filings in service of ruling against her, isolating "the material factual differences between the dismissed complaint and the proposed amended complaint" before finding futility. JA235. In short, the district court put its thumb on the wrong end of the scale.

Finally, though "'a discrimination analysis must concentrate not on individual incidents, but on the overall scenario,'" *Laurent-Workman v. Wormuth*, 54 F.4th 201, 218 (4th Cir. 2022), the district court did not step back and consider the whole complaint. Instead, it examined each incident in isolation, which prevented it from "draw[ing] all reasonable inferences in favor of the plaintiff[]." *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 685 (4th Cir. 2018).

As one example: When taking stock of Davina's allegations of harassment and cyberbullying, the court called these "[c]onclusory" and found that "*the* reasonable inference*" is that the comments were "'simple acts of teasing and name-

calling.'"  JA074 (emphasis added).  But surely it is also reasonable to infer that "nasty, racially biased comments," JA120, were indeed nasty and racially biased.

As another:  When examining the school newspaper, the court failed to recognize that this was published in March and reflected Enloe's overall environment.  While the court concluded that the "facts in the complaint do not 'provide[] necessary evidence of a potential link between … education[al]' harm and the *alleged conduct in [the] April edition of the school newspaper*," JA076 (alterations in original) (emphasis added); JA239 (same), that misses the gravamen of Davina's complaint.  It is not just the school newspaper that caused her harm; it is all the events leading up to, including, and following from the student council election.  And the point is that these events—as a whole—amounted to discrimination. *See infra* at 26-45.  The district court did not grapple with that overarching point.

The district court failed to liberally construe Davina's complaint and draw all reasonable inferences in her favor.  Applying a properly solicitous approach, this Court should reverse the judgment below and remand with instructions to grant Davina leave to amend her complaint.

### B.    Davina Adequately Pleaded A Title VI Discrimination Claim

Title VI provides that "[n]o person in the United States shall, on the ground of race, … be denied the benefits of, or be subjected to discrimination under any

26

program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d; *see also* 34 C.F.R. § 100.3(b)(1)(iv) (A "recipient … may not … [r]estrict an individual in any way in the enjoyment of any advantage or privilege enjoyed by others receiving any … benefit under the program."). Although this Court has not yet recognized the existence of a Title VI claim for student-on-student racial harassment, several other circuits have. *Adams v. Demopolis City Schs.*, 80 F.4th 1259, 1273 (11th Cir. 2023); *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 408 (5th Cir. 2015); *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 271-73 (3d Cir. 2014); *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 664-65 (2d Cir. 2012); *Bryant v. Indep. Sch. Dist. No. I-38 of Garvin Cnty.*, 334 F.3d 928, 934 (10th Cir. 2003). These circuits recognize that Title VI and Title IX "are parallel" and "operate in the same manner." *Adams*, 80 F.4th at 1273. So they use the standard that the Supreme Court articulated for Title IX claims in *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999).

This Court should do the same and hold that schools can be liable under Title VI for their deliberate indifference to student-on-student racial harassment. To state that claim, a plaintiff must allege that: "(1) they were a student at an educational institution receiving federal funds; (2) they suffered [racial] harassment that was so severe, pervasive and objectively offensive that it deprived them of equal access to the educational opportunities or benefits provided by their school; (3) the school,

through an official who has authority to address the alleged harassment and to institute corrective measures, had actual notice or knowledge of the alleged harassment; and (4) the school acted with deliberate indifference to the alleged harassment." *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 263-64 (4th Cir. 2021) (Title IX); *see also M.D. v. Sch. Bd. of the City of Richmond*, 560 F. App'x 199, 202-03 (4th Cir. 2014) (applying part of *Davis* to Title VI claim).

Davina plausibly alleged the first element, JA104-105, and the district court accepted as much. Liberally construed, her complaint also plausibly alleged (1) that she suffered severe and pervasive racial harassment; (2) that the school had actual notice of that harassment and substantial control over the context and the harassers; and (3) that the school acted with deliberate indifference to that harassment. The district court erred in concluding otherwise.

### 1.   Davina Plausibly Alleged That She Suffered Severe And Pervasive Racial Harassment

Davina adequately pleaded that she suffered severe and pervasive racial harassment at the hands of her peers. The district court erred in holding that she did not. Davina was also deprived of equal access to the benefits provided by her school, and the district court did not hold otherwise.

a.   Whether harassment is sufficiently severe, pervasive, and offensive "depends on a constellation of surrounding circumstances, expectations, and relationships." *Davis*, 526 U.S. at 651; *Jennings v. Univ. of N.C.*, 482 F.3d 686, 695-

96 (4th Cir. 2007) (en banc) ("severe or pervasive" discrimination depends on "the examination of all the circumstances"). "[S]imple acts of teasing and name-calling," comparable to "four-eyes" or "scaredy-cat," do not meet this bar. *Davis*, 526 U.S. at 652. By contrast, racial epithets including the N-word or "black bitch" "clearly surpass[] normal schoolyard teasing." *Neuman v. Georgetown Indep. Sch. Dist.*, 2024 WL 535884, at *4 (W.D. Tex. Feb. 8, 2024), *appeal docketed*, No. 24-50120 (5th Cir. Feb. 22, 2024); *Adams*, 80 F.4th at 1272. So too can "peer-on-peer, racially motivated cyber-bullying." *Mihnovich v. Williamson Cnty. Bd. of Educ.*, 2014 WL 5586198, at *1-3 (M.D. Tenn. Nov. 3, 2014); *see also, e.g.*, *I.M. v. Granville Cnty. Schs.*, 2022 WL 3441835, at *7-8 (E.D.N.C. Aug. 16, 2022).

Considering all the circumstances here, Davina adequately pleaded that she suffered severe and pervasive racial harassment at the hands of her peers. That harassment began shortly after she—seeking to change Enloe's culture and to speak out against discrimination—decided to run in the student council election. JA111; JA189; JA136. The student council "lack[ed]" a desire to "promot[e] racial equality," and as a result a number of student council members (including those who oversaw the election) "opposed" Davina's candidacy. JA114-115, JA117.

In the lead up to the initial election, that opposition manifested itself in destroying her campaign materials in a "deliberate and targeted destruction" while leaving Caucasian students' materials intact. JA115-116, JA133. It also showed up

in the intentional exclusion of all four African-American students from mock polls and endorsements.  JA115, JA132.  Then, on the day of the election, student-council members excluded Davina from the junior class ballot.  JA117-118.

After that ballot exclusion, Davina complained about discrimination.  JA118.  Barilich quickly dismissed those claims, and his statement "marked the start" of the more severe racial harassment that followed.  *Id.*  Lyons then made decisions that intensified that harassment—hastily dismissing the possibility of discrimination and choosing a reelection that provoked student anger and turned Davina into the "prime target" for that anger.  JA119.

"[I]mmediately," other students "started cyberbullying" Davina, labeling her an "'angry Black girl'" and blaming her for "overreacting to a 'technical glitch' and calling it discrimination."  *Id.*  In addition, students complained that "Black kids caused a reelection" and said that "no one was going to vote for a bunch of angry Black girls."  JA120-121.  No wonder that Davina was the only one of the excluded students who ran in the reelection.  JA119.

Before the reelection, the hostility was palpable in other ways too.  Two bomb threats were made by students angry about the reelection.  JA122.  Davina's campaign materials were again torn off the wall, and she became fearful about going to school.  *Id.*

30

Beyond that, an edition of the school newspaper, passed off as satire, made several "jokes" at Davina's expense. *See* JA161-170. The newspaper included an article about the Oscars being "falsely accused of discrimination" and accused the "BET awards" of being "the real culprits of exclusion." JA163. It also queried the "sanity and sobriety of the people making these claims," and doubted "the legitimacy of black actors' complaints." *Id.* The barely hidden subtext here is that Davina's complaints about the ballot exclusion were illegitimate or even insane.

Another article proceeded similarly, mocking the idea that African-American students are "drastically underrepresented in student government"—in part why Davina ran for student council—by interviewing a "cockroach" from "Southeast Raleigh." JA168. It also joked about "the diversity that Enloe is so proud of." *Id.* And the cockroach references making "backpack tags" to support its campaign, *id.*, which were part of the campaign materials that Davina made and then had destroyed, JA115-116. Drawing reasonable inferences in Davina's favor, the school newspaper further exemplifies the harassment that she faced.

That was not all, as the harassment continued after the reelection. JA133-135. Classmates posted "nasty, racially biased comments" online, JA120, and continued their "online and on-campus" "racial harassment" until Davina graduated over two years later, JA135; JA146-147.

Taking all this together—as the law requires—Davina plausibly alleged severe, pervasive, and objectively offensive racial harassment.

b.  The district court erred in holding otherwise.  At the outset, the court made an overarching mistake by dicing up Davina's allegations into discrete chunks without considering the allegations as a whole.  *See, e.g.*, JA071 (stating that, as to mock ballot, "this conduct" was not severe and pervasive).  The whole point of the severe and pervasive inquiry is that there can be a *cumulative* effect from individual incidents of harassment.  *E.g.*, *EEOC v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 177 (4th Cir. 2009) (requiring inquiry into "'cumulative effect'" of harassment).  That is why this Court has repeatedly required an "examination of all the circumstances" and looked to the "total impact" of the harassment.  *Jennings*, 482 F.3d at 696, 700; *see also, e.g.*, *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 211 (4th Cir. 2019) (noting "requirement" to "consider the totality of plaintiff's experience in evaluating whether an environment is severe or pervasive"); *Laurent-Workman*, 54 F.4th at 218 ("'[A] discrimination analysis must concentrate not on individual incidents, but on the overall scenario.'").

The district court was also wrong as to its particular conclusions.  For example, it found that Davina's allegations about her campaign materials were "'consistent with discrimination'" but still "speculative."  JA072; *see also* JA237.  But Davina alleged that student council members were specifically opposed to her

candidacy, and that Caucasian students did not suffer a similar fate.  There is nothing speculative about inferring discrimination here.

Next, the court thought Davina offered "[c]onclusory assertions" of cyberbullying and "bare assertions" of nasty racial comments on top of specific "inappropriate," "unseemly," "unfair," and "unwarranted" incidents that the court nonetheless equated to "'simple acts of teasing and name-calling.'"  JA074; *see also* JA238.  The district court assumed that Davina needed to allege the racial equivalent of a "'serious sexual assault,'" or things like the N-word, a "noose being left on her car," or "'swastikas[] and the letters 'KKK' inscribed in school furniture.'"  *See* JA071, JA074-075.  While courts have rightly found such conduct *sufficient* for the severe and pervasive inquiry, the district court incorrectly assumed that identical conduct was *necessary* to satisfy the same.  And when the Supreme Court gave examples of "teasing" and "name-calling" in *Davis*, it offered "four-eyes" and "scaredy-cat," 526 U.S. at 652—nothing like the racial language alleged here.

The court also thought that there was no basis to reasonably infer a racial motivation for the bomb threats.  JA238; *see* JA075.  But the first threat happened the day after the initial election, and the second followed shortly thereafter.  Moreover, Davina alleged that these threats were made by students who were angered by the reelection requirement, JA122, and that students viewed Davina as

the cause of that requirement, JA119-120. She thus did not rely on "[t]emporal proximity alone." JA075.

Finally, the court found that the school newspaper was irrelevant because some of the statements revealed "no basis from which to reasonably infer racial bias," while the others that "at least touch on race" were insufficiently severe and pervasive. JA075-076. And it concluded that Davina "fail[ed] to 'provide[] [the] necessary evidence of a potential link between … education[al]' harm and that alleged conduct." JA239 (alterations in original) (quoting JA076). But the court both missed key language and failed to draw the reasonable inferences connecting this language to the student council election. *Supra* at 24; *see* JA239 ("[f]urther details" regarding newspaper "fail[ed] to alter" court's earlier conclusion). Its failure to construe the complaint liberally is evident yet again.

c. As a result of this severe and pervasive harassment, Davina was "deprived … of equal access to the educational opportunities or benefits provided by [her] school." *Doe*, 1 F.4th at 263-64. "Educational benefits include an academic environment free from racial hostility," *Zeno*, 702 F.3d at 666, and Davina was deprived of that environment. In addition, Davina had both "incidents of fainting" (which caused a concussion) and even "suicidal thoughts." JA135, JA157. That psychological harm, "anxiety, and emotional distress" had an impact on Davina's education, making it more difficult for her to learn. JA157-158. She thus was

deprived of equal access to the benefits provided by her school.  The district court did not hold to the contrary.

> **2.  Davina Plausibly Alleged That The School Had Actual Notice Of The Racial Harassment And Substantial Control Over The Harassers And The Context**

Davina plausibly alleged that the school had (a) actual notice of the racial harassment that she faced and (b) substantial control over both the harassers and the context.

a.  Davina plausibly alleged that the school had actual notice.  A school "has actual notice or knowledge when it is informed or notified of the alleged harassment—most likely via a report." *Doe*, 1 F.4th at 266.  Even "being 'alerted' to the 'possibility'" of harassment is sufficient.  *Id.* (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291 (1998)).  Likewise, "complaints" or "allegations" are "sufficient to show actual notice." *Id.* at 266-67.  The key is "whether an appropriate official in fact received such a report or complaint and whether a reasonable official would construe it as alleging misconduct." *Id.* at 268.

Enloe administrators knew that Davina's campaign materials had been destroyed.  JA116, JA137.  On the day of the election, Davina reported being excluded from the ballot to Sawyer and Barilich, JA118; Lyons' subsequent decision to proceed with a reelection shows that he knew of the exclusion, JA119; Davina's mother emailed the superintendent's office, JA118-119; and both a local NAACP

35

leader and another civil-rights advocate reached out in the following days, JA126. As for the harassment that followed, Davina's mother notified administrators that "African-American students who ran as candidates are currently being blamed for the restart of the entire process" and were being "targeted."  JA125; JA138 ("multiple complaints" sent to administrators and Lyons); JA181-182 (report that excluded students "are being accused" of causing a reelection and Davina and others were "being harassed" (emphasis omitted)).  The local news also ran a story on the election, noting that "the African-American kids [were] being harassed and ostracized" in the aftermath.  JA173.  And during a June 2016 board meeting, the Board was directly informed of the cyberbullying.  JA126.  The school also knew about the bomb threats.  JA122.  And it affirmatively approved the publication of the school newspaper.  JA113.

Davina thus plausibly alleged "actual notice or knowledge," *Doe*, 1 F.4th at 266, and the district court did not find otherwise.  Indeed, it recognized that Davina's complaint alleged an "'aware[ness] of the discriminatory acts'" at issue.  JA085.

b.  Beyond actual notice, the school must have "authority to address the alleged harassment and to institute corrective measures." *Doe*, 1 F.4th at 264.  That means that the school "exercises substantial control over both the harasser and the context in which the known harassment occurs." *Hurley*, 911 F.3d at 687 (quoting *Davis*, 526 U.S. at 645).

*Control Over Harassers.* Davina alleged that the school exercised substantial control over her harassers. To show that, the school's "'disciplinary authority'" is key. *Hurley*, 911 F.3d at 688; *see also Zeno*, 702 F.3d at 665 ("[A] school district's authority to take remedial action lies in its longstanding disciplinary oversight over its students."). Also relevant is whether the school has "previously disciplined students … for derogatory off-campus speech." *Hurley*, 911 F.3d at 688.

The school district undoubtedly exercised disciplinary authority over its students. For instance, Davina alleged that students at Enloe had been "arrest[ed]" for a "water-balloon prank," JA114; that another student council member at Enloe was "suspended," JA147; and that the district as a whole annually suspended or referred hundreds of students to the court system, JA112. And in 2017, the district "suspended three students for sharing a private video with other students in which the three made 'derogatory statements against different ethnic and racial groups.'" JA139. Thus, Davina sufficiently alleged control over the harassers.

The district court largely accepted that the school had substantial control over Davina's peer harassers. However, the court found it "implausible" that the school "had the requisite control over students" when students made social media accounts purporting to represent Enloe and posted polls and endorsements—even though Davina alleged that the school "'had full control'" over these "social media accounts." JA237-238 (quoting JA138-139; citing JA109). This is yet another

instance where the district court drew inferences against Davina instead of in her favor, especially where her complaint included an allegation that the school *did* discipline other students for their activity on social media.  JA139.

*Control Over Context.*  Davina also alleged that the school exercised substantial control over the context where harassment occurred.  A school obviously has substantial control where "the misconduct occurs during school hours and on school grounds."  *Davis*, 526 U.S. at 646.  Additionally, the school's ability to "exercise[] control in other ways that might have corrected the hostile environment" is relevant—for example, by "more clearly" communicating "to the student body" that the school "would not tolerate [racially] harassing behavior either in person or online"; by conducting "mandatory assemblies"; or by providing anti-harassment "training to the entire student body and faculty."  *Hurley*, 911 F.3d at 688.

Davina plausibly alleged such control.  Much of the harassment occurred during school hours and on school grounds.  For instance, the destruction of Davina's campaign materials occurred on campus.  JA115-116, JA122.  And Davina alleged that some of the subsequent racial harassment she faced occurred "on-campus."  JA137, JA146-147; *see also, e.g.*, JA134.  Likewise, the school newspaper's publication occurred during school hours and on school grounds.  JA113.

Other harassment occurred online—for example, the Twitter polls and the cyberbullying. *E.g.*, JA115-116, JA120, JA136-137. But even there, the school cannot avoid liability "solely because the offending conduct took place through cyberspace." *Hurley*, 911 F.3d at 688-89. That harassment "concerned events occurring on campus" and "specifically targeted" Davina. *Id.* at 687. To boot, the school could have discouraged cyberbullying or racial discrimination; held an assembly; or provided anti-discrimination training. *See id.* at 688. Indeed, Davina's mother encouraged administrators to gather "students and staff in an auditorium and speak with them" about discrimination. JA182. And though the Board had policies mandating anti-harassment and anti-discrimination training, no training along those lines occurred. JA136, JA142.

With one exception, the district court accepted that the school had control over the context in which harassment occurred. The only shortcoming it found was that the school did not have control over the "anonymous comments" on the "online news article" run in the aftermath of the student council election. JA238; *see supra* at 9 n.2. Fair enough, but that misses why Davina included the news article: Not to suggest that these comments were themselves actionable, but both to illustrate the type of harassment that she faced following the election and to reinforce that the

district had notice of the harassment.  So the court's holding does not detract from the overall conclusion that the school district had control over the context.[7]

### 3.    Davina Plausibly Alleged That The School Acted With Deliberate Indifference To The Racial Harassment

Davina also plausibly alleged deliberate indifference, and the district court's holdings to the contrary do not withstand scrutiny.

a.    Davina also plausibly alleged deliberate indifference.  "[D]eliberate indifference" lies "'somewhere between the poles of negligence at one end and purpose or knowledge at the other.'"  *Basta v. Novant Health Inc.*, 56 F.4th 307, 317 (4th Cir. 2022) (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)).  Plaintiffs need not allege that the school was "entirely unresponsive to allegations of harassment"; it is enough to plead that the school "did not engage in efforts that were 'reasonably calculated to end [the] harassment.'"  *Hurley*, 911 F.3d at 689 (alteration in original) (quoting *Zeno*, 702 F.3d at 669).  Taking "limited steps" or "a short-term countermeasure—a one-off" is insufficient to stave off allegations of deliberate indifference.  *Id.* at 690.  And the "mere act of listening to students is not a remedy in and of itself."  *Id.*; *see also S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty.*, 819

---

[7]    At any rate, the district court admitted that this language was "egregious." JA238.  Yet it apparently used this "no control" rationale to discount the possibility that this language was at all representative of the harassment that Davina faced.  A fair construction of the complaint—and certainly a liberal one—would lead to the reasonable inference that Davina faced other "egregious" harassment along similar lines.

F.3d 69, 77 (4th Cir. 2016) ("half-hearted investigation" may not "suffice to shield a school from liability").

Davina alleged that the school did not respond to the harassment that she suffered.  For example, she alleged that no one did anything about her destroyed campaign materials, JA116, JA137, and that some administrators refused to meet about the ballot exclusion, JA118.  Crucially, Davina alleged that she suffered from harassment for "months" and even until she "graduated from Enloe" two years later. JA133, JA135.  And she repeatedly alleged that there was no attempt to address that harassment by the school. *See, e.g.*, JA135 (alleging "escalating harassment with no intervention"); JA146 (Sawyer "failed" to "respond to racial harassment" against Davina); JA147 (Lyons "ignored … the repeated racial harassment" against Davina "both online and on campus" despite "multiple complaints").  Indeed, when the Board was told about cyberbullying and indifference to discrimination, some board members responded "[t]hat's just the culture" of the school district.  JA139-140; *see also* JA126, JA135-136, JA191.  And to top it off, the school affirmatively published the school newspaper, providing a forum for students to harass Davina and then pass it off as a joke.  JA113.  These allegations suffice to show that the school "might have facilitated the hostile environment or, in the least, permitted it to continue." *Bryant*, 334 F.3d at 933.

b.  In its decision granting Defendants' motion to dismiss, the district court held that "Plaintiff's complaint, fairly read, asserts that defendant Board" showed "deliberate indifference to discriminatory acts against her."  JA085.  So at the start, the court appeared to accept Davina's allegations as sufficient.  The one exception was the school's response to the ballot exclusion, which the court found was not "clearly unreasonable."  JA073 (quoting *S.B.*, 819 F.3d at 77).  In particular, it thought Lyons' announcement of a reelection precluded Davina's claim because the school made an attempt at addressing the ballot exclusion.  JA073-074.

But even if that is right, it would not justify dismissing the entire complaint.  And it is wrong; Lyons' response *was* clearly unreasonable.  First, that response ignored allegations of discrimination by Davina (a minor at the time) and her mother, instead asserting that the exclusion was due to a website issue plus "some oversight" problems.  JA119.  But if there were oversight problems, Lyons failed to remedy them:  He allowed the same people to run the reelection.  JA128.  Second, the decision to conduct a reelection, combined with the hasty pronouncement that the exclusion was a mistake, only exacerbated the harassment that Davina faced.  The reelection, accompanied by requirements to requalify and re-campaign, led to "hostility, resentment, and frustration" from Davina's peers, turning her into their "prime target" because she was "the only one out of the four excluded African-American students running for the reelection."  JA119.  Third, while a school need

not cede to a particular remedial demand, here there was a straightforward alternative, preferred by "all" of the student council candidates:  Add the excluded names to the correct ballots and vote again.  *Id.*  That was simpler, and it would have put the matter to bed quickly instead of protracting the process (and provoking more harassment).  The existence of a clearly superior alternative casts substantial doubt on the idea that Lyons' preferred path was "reasonably calculated to end [the] harassment.'"  *Hurley*, 911 F.3d at 689 (alteration in original) (quoting *Zeno*, 702 F.3d at 669); *cf. Zeno*, 702 F.3d at 670 (jury was "entitled to compare the alternatives offered … when it evaluated the adequacy of the District's ultimate response").

c.  In its decision denying Davina leave to amend, the district court offered further reasons to find that there was no deliberate indifference.  These do not hold up either.

First, the court thought that the district's internal investigation on the ballot exclusion cut against Title VI liability.  JA240.  That is wrong for several reasons.  To start, almost three months of harassment had already been permitted by that time.  And this internal investigation (led by Trice) was focused on the ballot exclusion; it was not an attempt to address Davina's harassment or other complaints.  JA127.  Even with that limited scope, Trice's investigation did turn up several instances of harassment.  JA120-121.  That supports the reasonable inference that a more fulsome investigation—one that, say, followed the Board's policies on discrimination and

harassment—would have turned up yet more evidence. *Cf.* JA110 (school must "impartially, promptly, and thoroughly investigate the complaint" and investigator "shall interview" the complainant, the alleged perpetrators, and witnesses (emphasis omitted)). And the district's failure to follow its own policies is surely relevant to analyzing deliberate indifference. *See, e.g.*, *Weatherholt v. Bradley*, 316 F. App'x 300, 302 (4th Cir. 2009) (failure to follow proper procedures was not "conclusive" but "constitutes some evidence" of deliberate indifference).

Second, the court thought that an email by Lyons in response to one of the reports of harassment showed a lack of deliberate indifference because he "stat[ed] that he had not previously heard of the harassment and request[ed]" that Davina "come see him or another administrator." JA237. But a mere offer to talk—while putting the burden on a sixteen-year-old victim of harassment before doing anything more—does not suffice to undercut allegations of deliberate indifference. *See Menzia v. Austin Indep. Sch. Dist.*, 47 F.4th 354, 362 (5th Cir. 2022) ("A school district's meeting with a Title VI complainant to listen to reports of racial harassment, and its effort to encourage complainants to make reports, are not remedial actions responsive to reported harassment under Title VI."). After all, if *actually* "listening to students is not a remedy in and of itself," *Hurley*, 911 F.3d at 690, then neither is *offering* to listen. And there is no allegation that Lyons did anything further regarding the complaints of harassment; in fact, Davina alleged that

Lyons "deliberately ignored and continued to ignore the repeated racial harassment" and the "multiple complaints" that were made on her behalf. JA147.

In sum, the school at most responded with a short-term countermeasure, undertook a half-hearted investigation, and offered a hypothetical opportunity to talk. That does not suffice to shield the school from liability at the motion to dismiss stage, *see S.B.*, 819 F.3d at 77; *Hurley*, 911 F.3d at 690—especially where Davina's complaint clearly alleged a repeated and long-lasting failure to respond to the harassment that she was suffering. Davina has therefore adequately pleaded each element of her Title VI discrimination claim based on deliberate indifference to student-on-student harassment.

### C.    Davina Adequately Pleaded A Title VI Retaliation Claim

To state a claim for Title VI retaliation, Davina needed to allege that "(1) she engaged in protected activity; (2) that [the school] took a material adverse … action against her, and (3) that a causal connection existed between the protected activity and the adverse action." *Peters v. Jenney*, 327 F.3d 307, 320 (4th Cir. 2003); *see* 34 C.F.R. § 100.7(e) (prohibiting retaliation under Title VI); *Hurley*, 911 F.3d at 694 (Title IX). She did all three.

### 1.    Davina Plausibly Alleged That She Engaged In Protected Activity

To show that she engaged in "protected activity," Davina had to allege that she "opposed" unlawful discrimination which she "'reasonably believed had

occurred or was occurring.'" *Peters*, 327 F.3d at 320-21. Reasonable belief requires alleging a subjective good-faith belief that discrimination occurred that "'was objectively reasonable in light of the facts.'" *Id.* at 321 (emphasis omitted).

Davina alleged that she objected to the ballot exclusion, telling Sawyer and Barilich that it "look[ed] like discrimination." JA118. She also alleged that she had generally "been vocal against racism at Enloe." JA111. And she alleged that her mother also opposed the discrimination she suffered. *E.g.*, JA125. Her entire complaint illustrates her subjective good-faith belief that discrimination occurred, and that belief was objectively reasonable at the time given the events that had already occurred, including the destruction of her materials and the exclusion of all four African-American candidates (including Davina) from polls run by student council members in the lead-up to the election. *Supra* at 5-6. For good reason, the district court did not dismiss Davina's retaliation claim on this basis.

### 2. Davina Plausibly Alleged That She Suffered Materially Adverse Actions

For the retaliatory conduct to be materially adverse, "it must suffice to 'dissuade[] a reasonable [person] from making or supporting a charge of discrimination.'" *Hurley*, 911 F.3d at 694 (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)). Davina alleged a number of materially adverse actions. First and foremost, Davina alleged that her peers harassed her in retaliation for her allegations of discrimination in the ballot exclusion: For example, by calling

her "one of the 'angry Black girls'" and blaming her "for wrongly overreacting to a 'technical glitch' and calling it discrimination." JA119. In fact, Davina alleged that she became the "prime target" for her peers' frustration, as she was seen as the reason for the reelection process. *Id.* And the school newspaper is further evidence of that harassment, talking about "false[] accus[ations] of discrimination" and doubting the "sanity and sobriety of people making these claims." JA163. Though there had been harassment before, it rose to another level after Davina engaged in protected activity.

The district court wholly failed to consider the fact that retaliatory harassment can be a materially adverse action. *See* JA077-079; JA242-243. That flouts this Court's decision in *Hurley*, which held that "student-on-student retaliatory harassment" can "rise to the level of material adversity," even if "the institution's administrators did not personally participate in the harassment." 911 F.3d at 694, 696. There, as here, plaintiffs alleged that their peers engaged in retaliatory harassment and "ramped up" their harassment after plaintiffs engaged in protected activity. *Id.* at 695. There, as here, plaintiffs "plainly fault[ed]" the school "for its failure—over several months—to address and seek to eliminate retaliatory harassing conduct." *Id.* at 696. And there, as here, "the district court erred in dismissing the retaliation claim, insofar as it is predicated on [the school's] deliberate indifference to student-on-student retaliatory harassment." *Id.* Davina had no idea she was signing up for more than two years of harassment when she made an allegation of

discrimination, and a reasonable person who knew that she would suffer a similar fate would be dissuaded from doing the same.

Davina also alleged other materially adverse actions. She alleged that shortly after the ballot exclusion, she received a letter stating that she could not run in the re-election due to her absences, JA151; that during the election period, she asked two teachers for letters of academic reference, but the teachers refused (with one ignoring her in the hallway), JA152; that she suffered "a sudden and drastic drop[] in grades" in May 2016, JA153; that she was not selected for the varsity cheerleading team even after having been on the team for two years, *id.*; and that she was denied an International Baccalaureate diploma upon graduation, JA152.

The district court found that the post-exclusion letter was not a materially adverse event because Davina ultimately was able to participate in the reelection. JA242. But putting obstacles in someone's path can still be materially adverse even if they ultimately overcome those obstacles. *See, e.g.*, *Laurent-Workman*, 54 F.4th at 218 ("meddling" can be materially adverse if it dissuades reasonable person from complaining); *Steele v. Schafer*, 535 F.3d 689, 696 (D.C. Cir. 2008) ("materially adverse" standard does not consider plaintiff's "asserted imperviousness to acts of retaliation"). The district court also offered a conclusory statement that "the well-pleaded facts in the complaint fail to raise a reasonable inference that any other conduct directed towards plaintiff was materially adverse." JA077. But that is

48

wrong; a reasonable high-school student would likely be dissuaded from complaining about discrimination if she knew that her extracurricular activities and graduation awards would be affected.

### 3. Davina Plausibly Alleged That A Causal Connection Existed Between The Protected Activity And The Adverse Actions

Davina alleged that "a causal connection existed between the protected activity and the adverse action." *Peters*, 327 F.3d at 320. There should be no real dispute that a substantial amount of the harassment that Davina faced resulted from her complaint of discrimination in the ballot exclusion. Her complaint alleges as much: After Davina stated that the exclusion appeared to be discriminatory, her peers lashed out at her and told her that she was "wrongly overreacting to a 'technical glitch,'" and she became the "prime target" for harassment since she was the only one of the excluded African-American students who ran for reelection. JA119. Much of the online and on campus harassment that she suffered was a result of that fact. *E.g.*, JA133-134. The school newspaper provides further evidence of that causal connection where it questions the "sanity and sobriety of the people" making accusations of discrimination. JA163. Again, the district court completely failed to consider the causal connection between Davina's protected activity and the student-on-student harassment that followed.

As for the other adverse actions, Davina plausibly pleaded a causal connection by "either show[ing] a temporal proximity between the protected activity and

49

adverse action, or that other relevant evidence indicates 'continuing retaliatory conduct and animus' toward the plaintiff." *Alberti v. Rector & Visitors of the Univ. of Va.*, 65 F.4th 151, 156 (4th Cir. 2023). The letter stating that she could not participate in extracurricular activities followed shortly after her complaint of discrimination and came from Lyons. JA151. The teachers who denied her letters of academic reference did so during the election period. JA152. Her sudden drop in grades occurred shortly after the election period when she had suffered from a concussion, and one of the teachers who dropped those grades was an English teacher like Barilich. JA153. A reasonable inference, then, is that Barilich had told this teacher about Davina's complaints and that the teacher dropped her grades because of that fact.

Similarly, Davina's removal from the cheerleading team happened after the election and she was replaced by a less-experienced student, *id.*; a reasonable inference is that the cheerleading coach knew of Davina's complaints and of other students' antagonistic feelings toward Davina and sought to preserve team harmony by leaving her off the squad. And the denial of an International Baccalaureate diploma happened after the election, but when asked about the scoring Davina was only given a vague answer and the matter was never resolved. JA152. It is reasonable to infer that this denial, coupled with a refusal to provide further information, was linked to Davina's complaints about discrimination.

The district court waved away Davina's allegations on the letters of reference, the cheerleading team, and the diploma as conclusory and speculative. JA077-078; JA243. But this is just another example of its failure to liberally construe her pro se complaint—or even to seek to draw *any* reasonable inferences in her favor. *See supra* at 21-26.

### D. Davina Adequately Pleaded An Equal Protection Claim

The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV, § 1. Section 1983 "provides a method for vindicating" this constitutional right. *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016). Davina adequately pleaded an equal protection claim, both against several individual defendants and against the Board.

#### 1. Davina Adequately Pleaded An Equal Protection Claim Against Several Individual Defendants

For individual defendants, a plaintiff needs to allege (1) that "she 'was subjected to discriminatory peer harassment,'" (2) that "the school administrator 'responded … with deliberate indifference'" because the administrator "knew about harassment" and "'acquiesced in that conduct by refusing to reasonably respond to it,'" and (3) that "the school administrator's deliberate indifference was motivated by a discriminatory intent." *Hurley*, 911 F.3d at 702-03 (sexual harassment); *see also, e.g. DiStiso v. Cook*, 691 F.3d 226, 240-41 (2d Cir. 2012) (racial harassment).

As already discussed, Davina was subjected to discriminatory peer harassment.  *Supra* at 28-35.  And she alleged that several individual defendants knew about the harassment and responded with deliberate indifference.  *Supra* at 35-45; *see Hurley*, 911 F.3d at 703.

Allegations that individuals "sought to downplay the harassment" and "made no effort to stop" it are "sufficient to state the intent element of the equal protection claim."  *Hurley*, 911 F.3d at 703; *cf. Williams v. Port Huron Sch. Dist.*, 455 F. App'x 612, 618-19 (6th Cir. 2012) (equating "racially discriminatory intent" with "deliberate indifference").  Here, Davina's allegations suffice as to several individual defendants.

As to Lyons, Davina alleged not only that he "ignored" the "repeated racial harassment" both "online and on campus" in spite of multiple complaints, JA147, but also that he made the situation worse by dismissing the ballot exclusion as "obviously … a mistake" and mandating the reelection, JA173—and also that Lyons said he had "not received any reports of harassment" immediately after Davina's mother informed him that Davina was being harassed, JA187.  Lyons also "condoned" the publishing of the newspaper and even "participated" in one of the articles.  JA113-114.

As to Sawyer and Barilich, Davina alleged that they were aware of the discriminatory acts but did not address the situation, JA116; that Barilich made a

statement which "marked the start of the consequential racial harassment" against Davina, JA118; and that Sawyer failed to respond to racial harassment against Davina, JA146.

As to Price-O'Neil, Davina alleged that she "condoned" the student newspaper and "labeled the contents as just jokes." JA113; *see also* JA106, JA145. As to Merrill, Connelly, and Barnes, Davina alleged that they "ignored" her mother's complaints about harassments and "failed to address them," JA125, JA137, and that they failed to enforce internal policies requiring anti-discrimination training and the reporting of complaints, JA144. And as to Trice, Davina alleged that he "ignored" her mother's calls about harassment and that his "two hats" prevented him from effectively responding to discrimination. JA145.

Contrary to what the district court found, these allegations go beyond "mere knowledge of alleged acts of discrimination" or "allegations amounting to negligence." JA084. In light of this Court's standard in *Hurley*, the district court erred in concluding that Davina did not plead discriminatory intent. JA246-247. Davina stated an equal protection claim against these individual defendants.[8]

---

[8]  Because the district court held that Davina did not state a claim against the individual defendants, it declined to address Defendants' arguments regarding qualified immunity. JA085 n.10. If this Court agrees that the district court erred, it can remand for the district court to address qualified immunity in the first instance.

## 2. Davina Adequately Pleaded An Equal Protection Claim Against The Board

For the Board, a plaintiff "must show that the harassment was the result of municipal custom, policy, or practice." *Hurley*, 911 F.3d at 700-01 (quoting *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257-58 (2009)). Such a policy may "'be found in formal or informal ad hoc "policy" choices or decisions of municipal officials authorized to make and implement municipal policy.'" *Edwards*, 178 F.3d at 244 (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1385 (4th Cir. 1987)). And "an official policy can be inferred from a municipality's omissions as well as from its acts," so long as they "constitute 'tacit authorization' of or 'deliberate indifference' to constitutional injuries." *Wellington v. Daniels*, 717 F.2d 932, 935-36 (4th Cir. 1983).

Here, for the reasons described above, the Board was deliberately indifferent to the racial discrimination that Davina suffered. *Supra* at 40-45. That deliberate indifference allows this Court to "infer[]" an "official policy" on the part of the Board. *Wellington*, 717 F.2d at 935. Indeed, Davina alleged that the Board did not act in response to complaints about cyberbullying and harassment, instead replying "[t]hat's just the culture" of the district. JA140; *see also* JA126, JA135-136; JA191. Davina also alleged that the Board had been subject to numerous discrimination complaints and public outcry, JA140—so much so that district administrators "were concerned it was beginning to define us as a school system." WRAL News,

54

*WCPSS officials concerned racial incidents are 'beginning to define' district* (Mar. 16, 2017), https://www.wral.com/wcpss-officials-concerned-racial-incidents-are-beginning-to-define-district/16588702; *see also* Christina Sterbenz, *How racist bullying is tearing apart a school district in the South*, VICE News (Jan. 12, 2018), https://www.vice.com/en/article/j5vbg7/how-racist-bullying-is-tearing-apart-a-school-district-in-the-south (Trice stating that incident occurring in May 2017 was "one of the first examples that we've tried in this district" when it had open forum after black teddy bear was hung by noose at Wake County school).  And she alleged that the Board failed to follow, enforce, or train anyone on its anti-discrimination policies. JA141-142; *see, e.g.*, *Lee ex rel. E.L. v. Lenape Valley Regional Bd. of Educ.*, 2009 WL 900174, at *8 (D.N.J. Mar. 31, 2009) ("Defendants cannot shield themselves from liability by enacting anti-discrimination policies if they do not follow them.").

The district court acknowledged that "fairly read," Davina's complaint alleged that the Board "violated [her] constitutional rights through its deliberate indifference to discriminatory acts against her." JA085.  But it ultimately found that the Board was not subject to liability because "as indicated in the court's Title VI analysis, the complaint fails to provide the court with more than speculation that much of the conduct was premised on plaintiff's race" and so there was no "widespread pattern of unconstitutional conduct against plaintiff." JA087.  That conclusion is incorrect for the reasons already discussed.  So too is the court's

finding that the "'[t]hat's just the culture'" response was "too indeterminate" to raise a plausible claim.  JA248 (alteration in original).  In short, Davina plausibly stated an equal protection claim against the Board.

## CONCLUSION

For these reasons, this Court should reverse the judgment below and remand with instructions to grant Davina leave to amend her complaint.

Dated:  April 10, 2024                    Respectfully submitted,

                                          */s/ Alexander G. Siemers*
                                          Alexander G. Siemers
                                          LATHAM & WATKINS LLP
                                          555 Eleventh Street, NW, Suite 1000
                                          Washington, DC 20004
                                          (202) 637-2200
                                          alex.siemers@lw.com

                                          *Counsel for Appellant*
                                          *Davina Ricketts*

## REQUEST FOR ORAL ARGUMENT

Appellant Davina Ricketts requests oral argument in this case. This case presents important questions about Title VI, the Equal Protection Clause, and student-on-student racial harassment. Appellant believes that oral argument would aid the Court in its consideration of these issues.

## CERTIFICATE OF COMPLIANCE WITH RULE 32(g)

Counsel for Appellant Davina Ricketts hereby certifies that:

1.  This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Local Rule 32(b).  The brief contains 12,823 words (as calculated by the Microsoft Word 365 word processing system used to prepare this brief), excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

2.  This brief complies with the type-face requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6).  The brief has been prepared in proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman style font.


Dated:  April 10, 2024                    *s/ Alexander G. Siemers*
                                          Alexander G. Siemers
                                          LATHAM & WATKINS LLP
                                          555 Eleventh Street, NW
                                          Suite 1000
                                          Washington, DC 20004
                                          (202) 637-2200
                                          alex.siemers@lw.com

                                          *Counsel for Appellant*
                                          *Davina Ricketts*