# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

DAVINA RICKETTS,

*Plaintiff-Appellant,*

v.

WAKE COUNTY PUBLIC SCHOOL SYSTEM, WCPSS; WAKE COUNTY
BOARD OF EDUCATION; KEITH SUTTON, current Board Member;
CHRISTINE KUSHNER, current Board Member; JAMES MARTIN, current
Board Member; ROXIE CASH, current Board Member; MONIKA JOHNSON-
HOSTLER, current Board Member; LINDSAY MAHAFFEY, current Board
Member; TOM BENTON, former Board Member, in his individual capacity; BILL
FLETCHER, former Board Member, in his individual capacity; SUSAN EVANS,
former Board Member, in her individual capacity; KEVIN HILL, former Board
Member, in his individual capacity; JAMES MERRILL, former Superintendent, in
his individual capacity; CATHY MOORE, former Deputy Superintendent for
School Performance and current Superintendent, in her individual capacity;
MARVIN CONNELLY, former Chief of Staff, in his individual capacity; DANNY
BARNES, former Area Superintendent, in his individual capacity; RODNEY
TRICE, Assistant Superintendent for Equity Affairs, in his individual capacity;
SCOTT LYONS, former Principal of Enloe and current Principal of Heritage High
School, in his individual capacity; MONICA SAWYER, Asst. Principal of Enloe
High School, in her individual capacity; GEORGE BARILICH, 2016 Student
Council Election Advisor and current Enloe teacher, in his individual capacity;
TRUDY PRICE-ONEIL, Editor of Enloe newspaper, in her individual capacity,

*Defendants-Appellees.*

On Appeal from the United States District Court for the Eastern District
of North Carolina at Raleigh, No. 21-0049 (Hon. Louise Wood Flanagan)

## CORRECTED RESPONSE BRIEF OF DEFENDANTS-APPELLEES

Neal A. Ramee
THARRINGTON SMITH, LLP
Post Office Box 1151
Raleigh, NC 27602-1151
(919) 821-4711

June 28, 2024

*Counsel for Defendants-Appellees*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iv

ISSUES PRESENTED ........................................................................ 1

STATEMENT OF THE CASE .............................................................. 1

   I. Factual Background ...................................................................1

     A. Facts Alleged in the Amended Complaint ................................1

     B. Facts Alleged in the Proposed Second Amended Complaint....................5

     C. Procedural History.....................................................................6

SUMMARY OF ARGUMENT .............................................................. 8

STANDARD OF REVIEW .................................................................. 10

ARGUMENT ..................................................................................... 12

   I. The District Court Liberally Construed the Proposed Second Amended Complaint and Otherwise Treated Plaintiff Fairly Throughout the Proceedings Below ........................................................................12

     A. Liberal Pleading Standards Do Not Absolve Pro Se Litigants of Their Obligation to Allege Facts Sufficient to Sustain a Plausible Claim for Relief ......................................................................13

     B. The District Court Liberally Construed the Proposed Second Amended Complaint and Properly Applied the Rule 12(b)(6) Dismissal Standard ...............................................................15

     C. The District Court Was Solicitous of Plaintiff's Pro Se Status By, Among Other Things, *Sua Sponte* Offering Her the Opportunity to Submit a Proposed Second Amended Complaint After All Claims Had Been Dismissed, Refraining from Entering Final Judgment Until That Opportunity Was Afforded, and Dismissing Several of Her Claims Without Prejudice ............................................................23

II. The District Court Properly Denied Leave to Amend on the Basis of Futility Because the Proposed Seconded Amended Complaint Fails to State a Plausible Claim for Relief ................................................................. 24

   A. The Proposed Second Amended Complaint Fails to State a Plausible Title VI Discrimination Claim ...................................................24

      1. Plaintiff Has Not Pled Facts to Establish that She Suffered Harassment So Severe, Pervasive, and Objectively Offensive that It Deprived Her of Access to Educational Opportunities ............26

      2. Plaintiff Has Not Pled Facts to Establish that the Board Had Actual Knowledge of the Alleged Harassment and Substantial Control Over the Alleged Harassers ...................................................31

      3. Plaintiff Has Not Pled Facts to Establish that the Board was "Deliberately Indifferent" to Student-on-Student Harassment ..........35

   B. The Proposed Second Amended Complaint Fails to State a Plausible Title VI Retaliation Claim ........................................................37

   C. The Proposed Second Amended Complaint Fails to State a Plausible Equal Protection / Section 1983 Claim ....................................44

      1. Plaintiff Fails to State a Plausible Section 1983 Claim Against Defendant Board Because She Has Not Pled Facts to Establish an Unconstitutional Custom, Policy, or "Widespread" Practice That Violated Her Rights ..................................................................46

      2. Plaintiff Fails to State a Plausible Equal Protection Claim Against Any Individual Defendant ...................................................50

CONCLUSION ................................................................................ 53

OPPOSITION TO REQUEST FOR ORAL ARGUMENT ......................................55

CERTIFICATE OF COMPLIANCE ...................................................... 56

CERTIFICATE OF SERVICE .............................................................. 57

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..................................................... 9, 11, 12, 52

*Bass v. E.O. Dupont De Nemours & Co.,*
    324 F.3d 761 (4th Cir. 2003) ....................................................... 12

*Bd. Of Cnty. Com'rs of Bryan Cnty. Okl. v. Brown,*
    520 U.S. 397 (1997) ..................................................................... 48

*Beaudett v. City of Hampton,*
    775 F.2d 1274 (4th Cir. 1985) ..................................................... 20

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ....................................................... 9, 11, 12, 52

*Bhombal v. Irving Indep. Sch. Dist.,*
    809 Fed. Appx. 233 (5th Cir. 2020) ............................................. 33

*Bilal v. Geo Care, LLC,*
    981 F.3d 903 (11th Cir. 2020) ..................................................... 20

*Bing v. Brivo Sys., LLC,*
    959 F.3d 605 (4th Cir. 2020) ................................ 12, 14, 18, 27, 34, 41, 43

*Boyer-Liberto v. Fontainebleau Corp.,*
    786 F.3d 264 (4th Cir. 2015) ....................................................... 37

*Bryant v. Indep. School Dist.,*
    334 F.3d 928 (10th Cir. 2003) ..................................................... 31

*Burlington N. & Santa Fe Ry. V. White,*
    548 U.S. 53 (2006) ....................................................................... 38

*CACI Intern. Inc. v. St. Paul Fire and Marine Ins. Co.,*
    566 F.3d 150 (4th Cir. 2009) ....................................................... 49

*Clark County Sch. Dist. v. Breeden*,
    532 U.S. 268 (2001) ..................................... 38

*Davis v. Monroe Cnty. Bd. Of Educ.*,
    526 U.S. 629 (1999) ................... 26, 30, 34, 35, 47, 52

*Doe v. Fairfax Cnty. Sch. Bd.*,
    1 F.4th 257 (4th Cir. 2021) .................... 25, 32

*Dront v. Hutto*,
    565 F.2d 543 (8th Cir. 1977) ...................... 13

*Eastern Shore Mkts v. J.D. Assocs. Ltd.*,
    213 F.3d 175 (4th Cir. 2000) ..................... 11

*Edwards v. City of Goldsboro*,
    178 F.3d 231 (4th Cir. 1999) ..................... 10

*Equal Rights Ctr. v. Niles Bolton Associates*,
    602 F.3d 597 (4th Cir. 2010) ................ 25, 42, 53

*Erickson v. Pardus*,
    551 U.S. 89 (2007) ............................ 13

*Estelle v. Gamble*,
    429 U.S. 97 (1976) ........................... 13

*Feminist Majority Found. v. Hurley*,
    911 F.3d 674 (4th Cir. 2018) ........... 38, 42, 46, 50, 51

*Fitz v. Terry*,
    877 F.2d 59 (4th Cir. 1989) ..................... 20

*Greer v. Bd. Of Educ. Of Chicago, Ill.*,
    267 F.3d 723 (7th Cir. 2001) ............ 13, 17, 19, 29

*Hall v. Bellmon*,
    935 F.2d 1106 (10th Cir. 1991) ........... 14, 15, 22, 44

*In re Triangle Capital Corp. Sec. Litig.*,
    988 F.3d 743 (4th Cir. 2021) ..................... 11

*Jackson v. Lightsey, 775 F.3d 170 (4th Cir. 2019)*................................................. 12

*Lettieri v. Equant Inc.,*
    *478 F.3d 640* (4th Cir. 2007) ....................................................... 38

*Lytle v. Doyle,*
    *326 F.3d 463* (4th Cir. 2003) ........................................... 47, 48, 49

*Mahanoy Area Schl. Dist. v. B.L.,*
    *594 U.S. 180* (2021) ................................................................. 34

*Maisha V. Univ. of N. Carolina,*
    *641 Fed. Appx. 246* (4th Cir. 2016) ............................................ 38

*McCarter v. Univ. of N. Carolina at Chapel Hill,*
    *No. 1:30CV1050, 2024 WL 1142518* (M.D.N.C. Mar. 15, 2024) ......... 37, 38

*McCleary-Evans v. Md. Dep't of Transp.,*
    *780 F.3d 582* (4th Cir. 2015) ............................................... 27, 43

*McDonald v. Hall,*
    *610 F.2d 16* (1st Cir. 1979) ........................................... 14, 18, 43

*Monell v. Dep't of Soc. Servs. Of N.Y.,*
    *436 U.S. 658* (1978) ......................................................... 46, 47

*Mylan Labs, Inc. v. Matkari,*
    *7 F.3d 1130* (4th Cir. 1993) ........................................................ 11

*Owens v. Baltimore City State's Att'ys Off.,*
    *767 F.3d 379* (4th Cir. 2014) ..................................................... 47

*Peters v. Jenney,*
    *327 F.3d 307* (4th Cir. 2003) ............................................... 37, 41

*Ramirez v. Collier,*
    *595 U.S. 411* (2022) ................................................................. 21

*Sanchez v. Carrollton-Farmers Branch Indep. Schl. Dist.,*
    *647 F.3d 156 (5th Cir. 2011)* ..................................................... 26

*S.B. ex rel. A.L. v. Bd. of Educ. Of Harford Cnty.,*
    *819 F.3d 69* (4th Cir. 2016) ......................................................... 35

*Sayki v. Nationstar Mortgage, LLC,*
    *770 Fed. Appx. 113* (4th Cir. 2019) ........................................... 12

*Sneed v. Austin Indep. School Dist.,*
    *490 F. Supp 1069* (W.D. Texas 2020) ................................... 26, 31

*Spell v. McDaniel,*
    *824 F.2d 1380* (4th Cir. 1987) ...................................................... 47

*T.E. v. Grindle,*
    *599 F.3d 583* (7th Cir. 2010) ......................................................... 51

*Taylor v. Books A Million, Inc.,*
    *296 F.3d 376* (5th Cir. 2002) ................................................. 14, 18

*Torres v. Oakland Scavenger Co.,*
    *487 U.S. 312* (1988) ....................................................................... 25

*United States v. MedCom Carolinas, Inc.,*
    *42 F.4th 185* (4th Cir. 2022) ........................................................ 10

*United States v. NISH,*
    *756 F.3d 268* (4th Cir. 2014) ........................................................ 10

*Univ. of Texas Sw. Med. Ctr. v. Nassar,*
    *570 U.S. 338* (2013) ....................................................................... 38

*Vogt v. Wetzel,*
    *8 F.4th 182 (3d Cir. 2021*) ........................................................... 14

*Waldridge v. Am. Hoechst Corp.,*
    *24 F.3d 918* (7th Cir. 1993) .......................................................... 19

*Wall v. Rasnick,*
    *42 F.4th 214* (4th Cir. 2022) ........................................................ 18

*Weidman v. Exxon Mobile Corp.,*
    *776 F.3d 214* (4th Cir. 2015) ........................................................ 12

*Wellington v. Daniels,*
    *717 F.2d 932* (4th Cir. 1983) ....................................................... 47

*Whitfield v. Notre Dame Middle Sch.,*
    *412 Fed. Appx. 517* (3d Cir. 2011) ............................................ 31

**Statutes**

42 U.S.C. § 1983 .............................................. 9, 15, 17, 44-47

Title VI of the Civil Rights Acts of 1964 ..................................................

................................................ 9, 15, 17, 22, 24-26, 29-30, 32-33, 37, 40, 42, 51

Title VII of the Civil Rights Acts of 1964 ............................................ 38

Title IX of the Civil Rights Acts of 1964 .............................. 25, 26, 35, 38, 42, 50

**Rules**

Fed. R. Civ. P. 4 .............................................................1, 42

Fed. R. Civ. P. 8 .............................................................6, 22

Fed. R. Civ. P. 12 ....................................... 8-9, 11-12, 15, 17-18, 22-24, 49

Fed. R. Civ. P. 15 .............................................................10

## ISSUE PRESENTED

This is an appeal of the District Court's 6 July 2022 Order denying Plaintiff Davina Ricketts' Motion for Leave to File Second Amended Complaint on the basis of futility and its 6 July 2022 Final Judgment instructing the Clerk to close this case because all claims had previously been dismissed for failure to state a claim. JA225-249, 250-251. The District Court's 3 January 2022 order dismissing all claims, JA060-079, was not appealed within the time allowed by Rule 4 of the Federal Rules of Appellate Procedure and is not presented for appellate review. The sole issue before this Court is therefore whether the District Court abused its discretion in denying Plaintiff's motion for leave to amend and directing the Clerk to close the case after all claims had previously been dismissed.

## STATEMENT OF THE CASE

### I.  Factual Background

#### A.  Facts Alleged in the Amended Complaint

According to the Amended Complaint, Plaintiff is a former high school student who ran for office in 2016 in her school's student-run student council election. JA012, 027. On the day of the election, Plaintiff realized that the junior class ballot did not include her name or the names of several other students. JA031. Later that day, Defendant Barilich sent an email to all candidates to inform them that

some of their names were not included on the ballots due to technical problems. JA031. Defendant Lyons also called several students to his office to explain that "the cause of incident was due to something wrong with the website plus some oversight." JA032. These issues impacted a small number of students of several races. JA032-033.

Some Defendants offered race-neutral explanations for the ballot errors in this student-run election, including a student error in submitting an earlier, uncorrected version of the ballots to a Student Council leader, who created online ballots using the incorrect information. JA023-034. Plaintiff concedes that she accidentally "entered candidacy in the Sophomore category instead of the Junior category" but states that she emailed a Student Council election official the next day to rectify the error. JA029.

Because of the acknowledged inaccuracies in the ballots, the school's principal, Defendant Lyons, announced that there would be a "re-election" on 24 March 2016 and that all candidates would be required to repeat the entire campaign process. JA034. Plaintiff participated in the "re-election" but did not win. JA035.

Plaintiff does not dispute the integrity of the "re-election" process but complains that it was "against the request" of her parents and the parents of two other unnamed students and "angered many of the 100 plus candidates," some of

whom would have preferred a "re-vote" without an additional campaign period. JA034-035. According to Plaintiff, the "anger and frustration" of other students about an additional campaign period "grew on top of their resentment against Plaintiff on claiming discrimination in the election incident." JA034. This resentment caused other students to label her as one of the "angry Black girls," make unspecified "nasty racial comments," and "hurl[] accusations in the hallway" such as "Black kids caused a re-election!" JA034-035. Plaintiff also alleges that the school experienced two bomb threats, one of which occurred the day after Defendant Lyons announced the "re-election." JA035. She does not allege that they were racially motivated or that they referenced her or the election. Plaintiff further asserts that some of her "promotional materials" were "torn off the boards and walls," whereas materials posted by Caucasian students "remained intact." *Id.* She does not allege that the removal of her promotional materials was racially motivated.

Plaintiff alleges that at least some Defendants knew of concerns about her treatment after the election because her mother emailed Defendant Lyons to complain that "African-American students who ran as candidates are currently being blamed for the restart of the entire process." JA035-036. She also alleges that certain Defendants were contacted by an "advocate" for the students, who urged a "thorough investigation on the election incident and not to place an unnecessary burden on the

candidates in repeating the entire campaign process." JA036. She does not allege that any Defendant had actual knowledge of any specific incidents of Plaintiff's mistreatment by other students.

Plaintiff acknowledges that the District's Assistant Superintendent for Equity Affairs, Defendant Rodney Trice, conducted an "internal investigation" of the student council election at the request of Defendant Lyons and his Area Superintendent, Defendant Danny Barnes. JA014, 037, 043-044. She argues, however, that the investigation was inadequate because, among other things, Dr. Trice did not interview the parents of students involved in the election. JA044.

Finally, Plaintiff alleges that an April Fool's Day edition of an Enloe High School student newspaper, for which Defendant Price-O'Neil served as an "Editor," contained the following "demeaning and racist language": (1) "They are illegals, low-lifes"; (2) "construction on 'The Wall' will begin"; (3) "Although there is love for every student at Enloe (unless you are taking less than 5 AP classes, in which case you have 3 business days to get your stuff and get out[])"; (4) "Celebrate White History Month"; and (5) "Enloe cockroach tells all." JA026. She also complains that Mr. Lyons was depicted in the same April Fool's Day edition as a character named "DaLyons" who "raps" about his experience "surviving in Southeast Raleigh . . . as a White man." JA027. She offers no context for these remarks other than

Defendant O'Neil regarded them as "April-fools jokes." JA026.

## B. Facts Alleged in the Proposed Second Amended Complaint

Plaintiff's proposed Second Amended Complaint restates most of the claims and allegations of the Amended Complaint while adding a few details. For example, the proposed Second Amended Complaint alleges that:

- Certain unsourced data reflects racial disproportionality in referrals of African-American students in the District to the juvenile justice system. JA112-113.
- An unnamed person told an investigator for the United States Department of Education's Office for Civil Rights ("OCR") that "[s]ocial media was a big portion that made [Plaintiff and another student] feel like we were being discriminated against" because there "were multiple Twitter accounts that were made with polls to see who the public thought would win and we were never included on any of them." JA116.
- Plaintiff informed OCR that she had read unspecified "nasty, racially biased comments from classmates online." JA120.
- Another student told OCR that she felt "retaliated against" because "[s]tudents would use their personal Twitter accounts and talked about how [the re-election] was our fault," and a third student told OCR that he or she "received dirty looks or whispers" from other students for "making a big deal out of nothing." *Id.*
- Some "unidentified commenters" posting to an ABC11 online news report about Plaintiff's parent's allegations regarding the student council election "racially ridiculed and chastised Plaintiff's parent and Plaintiff." JA121.
- Plaintiff told OCR that "[a] lot of racial hostility was created from the second re-election." JA122.
- OCR addressed only some of Plaintiff's allegations and acted "unlawfully" in its handling of Plaintiff's racial harassment complaint. JA128.

In lieu of "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Plaintiff attached sixty-four (64) pages of documentary exhibits to her proposed Second Amended Complaint, including:

- A purported full copy of the April Fool's Day student newspaper, which does not mention Plaintiff or the student council election. JA161-170.
- A screenshot of what is apparently purported to be a tweet from Plaintiff to "@ehsstucopolls" complaining "when you don't include [another student] or myself in the polls they don't seem to be very accurate at all." JA160, 171.
- A purported reproduction of the ABC11 online news article about the claims made by Plaintiff's mother about the student council election, including the statements of the "unidentified commentors" who posted on the site. JA173-177.
- A set of emails to and from Plaintiff's mother and her advocate in which they protest the re-election decision. JA179-200.
- An OCR letter addressed to a school district in Ohio concluding that an athletic coach in that district discriminated against a student on the basis of race. JA204-223.

The proposed Second Amended Complaint also restates many of the same claims for relief that are set out in the Amended Complaint, followed by legal arguments in support of her position that she has satisfied all standards set out in the district court's order dismissing all her claims. JA103-158.

## C. Procedural History

Dissatisfied with the outcomes of an internal investigation conducted by the school system's Assistant Superintendent for Equity Affairs and a subsequent

external investigation conducted by the U.S. Department of Education's Office for Civil Rights, both of which found her complaints without merit, *see* JA037, 126, 127, 129, Plaintiff exercised her right to file a lawsuit in federal court on 2 February 2021. D.E. 1. She filed an Amended Complaint as a matter of right on 24 February 2021. JA011.

In response to Defendants' Motion to Dismiss, the District Court entered a 29-page order on 3 January 2022 dismissing all claims, some with prejudice and some without. JA060.[1] Of its own motion, however, the District Court refrained from entering judgment and ruled in the same order that "Plaintiff is allowed a period of time of **30 days**, from the date of this order, to file a motion for leave to amend her complaint." JA088 (emphasis in original). The Court directed that "[a]ny such motion must be accompanied by a proposed amended complaint" and cautioned that "any proposed amended complaint will be considered plaintiff's complaint in its entirety, and the court will not review plaintiff's prior filings to glean any misplaced claims." JA088.

On 2 February 2022, Plaintiff filed her Motion for Leave to File Second Amended Complaint and proposed Second Amended Complaint. JA089. After

---

[1] In an apparent typo, the Joint Appendix described this order as "Order Denying Motion to Dismiss." In fact, the District Court dismissed all claims. JA060; 087-088.

reviewing the parties' briefs in support of and opposition to the motion, the Court entered a 25-page order on 6 July 2022 denying leave to amend on the basis of futility. JA225-249. Because "all of plaintiff's claims were dismissed previously by the court's January 3, 2022, order, and [because] plaintiff's motion for leave to amend [was] denied," the Court directed the Clerk to close this case. JA248-249. The Clerk did so that same day. JA250-251.

Plaintiff filed a Notice of Appeal from the 6 July 2022 Order and Judgment on 1 August 2022. JA252-253. After a round of informal briefing, this Court appointed appellate counsel for Plaintiff and set a formal briefing schedule. JA010.

## SUMMARY OF ARGUMENT

Contrary to Plaintiff's arguments, the District Court liberally construed both the Amended Complaint and Second Amended Complaint before ruling on Defendants' motion to dismiss and Plaintiff's leave to amend. The Court did so expressly and in substance, as thoughtfully explained in detailed orders.

Not only did the District Court liberally construe Plaintiff's pleadings; it proactively offered her the opportunity to file leave to amend even after it had held all claims were subject to dismissal. Only after carefully reviewing the proposed Second Amended Complaint under the Rule 12(b)(6) standard and determining that amendment would be futile did the Court direct the Clerk to close the case. Even

then, the Court's orders and judgment do not necessarily foreclose all legal relief, as some of Plaintiff's claims were dismissed without prejudice.

In all of these ways, the District Court showed that it was solicitous of Plaintiff's pro se status and mindful not to dismiss her suit on any legal technicality. At the end of the day, however, all litigants must comply with the Rules of Civil Procedure, and all persons who are sued in federal court are entitled to a fair hearing on their Rule 12(b) defenses and the end of litigation that fails to state a plausible claim for relief. In directing the Clerk to close the case after three years of litigation, 84 docket entries, and two detailed orders, the Court honored its obligation to follow the law and honor the rights of all who come before it, including the twenty-one defendants named here.

In determining that it would be futile to grant Plaintiff leave to amend, the District Court properly applied *Twombly* and *Iqbal* to conclude the Second Amended Complaint failed to state a plausible Title VI discrimination claim, Title VI retaliation claim, or Equal Protection/Section 1983 claim. As part of that analysis, the Court assumed the truth of all factual allegations and drew all reasonable inferences from those allegations in Plaintiff's favor. It did not, however, cross the line between judge and advocate by rewriting her "threadbare" and "conclusory" allegations to supply the basis for missing elements of her claims. Plaintiff's lawsuit

was dismissed because, despite the lenience shown to her, she failed to state a claim for which the law provides relief.

## STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, a district court "should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a motion to amend a pleading "should be denied" when, among other things, "the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999). "[D]enials of leave to amend are . . . reviewed for an abuse of discretion." *United States v. MedCom Carolinas, Inc.*, 42 F.4th 185, 197 (4th Cir. 2022).

> At first glance, there seems a tension in this doctrine. Abuse-of-discretion review suggests district courts have free range, but a liberal policy of amendment and a narrow list of permissible reasons to deny amendment looks like a short leash. But the tension is fleeting. An abuse of discretion is where the judge has acted in an arbitrary or irrational manner, where he has completely failed to consider the right factors, or where he relied on faulty legal or factual premises. . . . Put simply, an abuse of discretion is when the district judge is "fundamentally wrong."

*Id.* at 197-98 (citation omitted).

When reviewing a district court's denial of leave to amend on the basis of futility, this Court applies "the same standard that [it] would apply to [its] review of a motion to dismiss." *United States v. NISH*, 756 F.3d 268, 274 (4th Cir. 2014); *see*

*also In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021)

("[D]istrict courts are free to deny leave to amend as futile if the complaint fails to

withstand Rule 12(b)(6) scrutiny."). In essence, therefore, this Court reviews de

novo a district court's determination that an amended complaint would fail to state

a claim. *In re Triangle Cap.*, 988 F.3d at 750.

Under the familiar 12(b)(6) standard, a court must accept as true all well-

pleaded factual allegations in the complaint, viewing the complaint in a light most

favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.

1993). However, a court need not accept as true a plaintiff's "legal conclusions, . .

. [or] unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore

Mkts. v. J.D. Assocs. Ltd. P'Ship*, 213 F.3d 175, 180 (4th Cir. 2000). A complaint

will not survive dismissal based on "'naked assertion[s]' devoid of further factual

enhancement" or "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements," *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). It must

allege "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*,

556 U.S. at 678, and must include factual assertions that, taken as true, are sufficient

to establish a "plausible" claim for relief. *Twombly*, 550 U.S. at 556. "Where a

complaint pleads facts that are 'merely consistent with' a defendant's liability, it

'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). To avoid dismissal under Rule 12(b)(6), a plaintiff has "the burden . . . to allege facts sufficient to state all the elements of her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).

A pro se litigant's pleadings are liberally construed and must not be dismissed for "unsophisticated language" or "failure to adhere to formalities." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020). "But liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Id.* At the end of the day, even a pro se complaint must "'state a claim to relief that is plausible on its face.'" *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678); *accord Sayki v. Nationstar Mortgage, LLC*, 770 Fed. Appx. 113, 113 (4th Cir. 2019) (unpub.); *Weidman v. Exxon Mobile Corp.*, 776 F.3d 214, 219 (4th Cir. 2015).

## ARGUMENT

### I. The District Court Liberally Construed the Proposed Second Amended Complaint and Otherwise Treated Plaintiff Fairly Throughout the Proceedings Below

A pro se complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by

lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Here, however, Plaintiff distorts the scope and purpose of this principle and ignores the many ways in which the District Court was solicitous of Plaintiff in light of her pro se status. A fair review of the District's Court's dismissal order and order denying leave to amend shows that the Court fairly and carefully applied the law with due regard to Plaintiff's pro se status at every stage of the proceedings.

### A. Liberal Pleading Standards Do Not Absolve Pro Se Litigants of Their Obligation to Allege Facts Sufficient to Sustain a Plausible Claim for Relief

Because pro se litigants do not have the benefit of legal counsel, "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id*. "The essence of liberal construction is to give a pro se plaintiff a break when, although he stumbles on a technicality, his pleading is otherwise understandable." *Greer v. Bd. of Educ. of Chicago, Ill.*, 267 F.3d 723, 727 (7th Cir. 2001).

Thus, "in circumstances where a petitioner's poverty forces him to proceed pro se, a court ought not to reject on technical grounds a right asserted within the hand-drawn (pro se) complaint." *Dront v. Hutto*, 565 F.2d 543, 544 (8th Cir. 1977). Similarly, a court will apply the applicable legal principle to a pro se litigant's

complaint "even if a pro se litigant failed to mention it by name." *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). Ultimately, "if the court can reasonably read the pleadings to state a valid claim on which the [pro se] plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

However, courts must not and will not accept a pro se litigant's conclusory allegations unsupported by well-pled facts. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) ("[R]egardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, 'conclusory allegations or legal conclusions masquerading as factual allegations will not suffice to prevent a motion to dismiss.'" (internal citation omitted)). "[C]onclusory allegations without supporting factual averments are insufficient . . . because a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Hall*, 935 F.2d at 1110. Additionally, liberal construction does not allow a court to assume unpled facts that might support a plaintiff's claims. *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) ("Our duty to be less stringent with pro se complaints does not

require us to conjure up unpled allegations."). While some solicitude is appropriate, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall*, 935 F.2d at 1110.

## B. The District Court Liberally Construed the Proposed Second Amended Complaint and Properly Applied the Rule 12(b)(6) Dismissal Standard

In its 3 January 2022 dismissal order, the District Court expressly stated the correct standard of review for a Rule 12(b)(6) motion to dismiss, including the requirement to accept as true all well-pled facts and draw all reasonable inferences from those facts in Plaintiff's favor. JA065-066. It then applied that standard with fidelity throughout the opinion. On *almost every page* and in *each relevant part* of its Title VI discrimination, Title VI retaliation, and Equal Protection/Section 1983 analysis, the Court carefully noted that the facts alleged, even if assumed to be true, did not support a "reasonable inference" of discrimination, harassment, or retaliation. JA071-078, JA081-082, JA084-085, JA087.

In its 6 July 2022 order denying leave to amend, the District Court fairly summarized the allegations in the proposed Second Amended Complaint, JA227-234, and correctly identified the 12(b)(6) standard of review as the key to its futility analysis. JA0234. Noting that it had previously dismissed all claims for failure to state a claim and that "[m]any of the additions to the proposed complaint are

plaintiff's advocated application of law to her factual allegations," the Court "focuse[d] on the material differences between the dismissed complaint and the proposed amended complaint" to determine whether any new or different factual allegations remedied previously identified fatal pleading defects. JA235. After 25 pages of factual summary and legal analysis, the Court concluded that the Second Amended Complaint failed to state a plausible claim for relief and that allowing it to be filed would be futile. JA248-249. The Clerk subsequently dismissed all remaining claims without prejudice. JA250-251.

Despite the Court's careful attention to the applicable legal standards, including its obligations to construe Plaintiff's complaint liberally and draw all reasonable inferences in her favor, Plaintiff argues that it "failed to liberally construe" her proposed Second Amended Complaint. Pl. Br. 21. She offers six unavailing arguments in support of this position.

First, Plaintiff complains that the Court "only briefly acknowledged" that she was proceeding pro se and "never mentioned the requirement to construe pro se complaints liberally, especially if they raise civil rights issues." Pl. Br. 23. Plaintiff concedes, as she must, that the District Court did acknowledge that she was then proceeding pro se, albeit "briefly." *Id.* She cites no authority for the proposition that a district court must acknowledge a litigant's pro se status at length. Nor does

she cite any authority for the proposition that a district court must expressly state that pro se complaints should not be dismissed on the basis of a "technicality," *Greer*, 267 F.3d at 727, or expressly disclaim that it is doing so when applying the Rule 12(b)(6) standard.  Nor does she cite any authority for the proposition that a court must expressly acknowledge that a racial discrimination and harassment case brought under Title VI and Section 1983 is a civil rights case and that civil rights are important.

The question before this Court is whether the District Court *was* sufficiently solicitous of Plaintiff, not whether it *said* it was acting solicitously or sufficiently *stressed* the reasons such care may be warranted.  This Court should review the order on appeal for substantive error, not for tone or emphasis.

Second, Plaintiff complains that the District Court "reprimanded" her for "misunderstand[ing] the relevant pleading requirements" and "faulted" her for "inartful[] plead[ing].'"  Pl. Br. 23 (quoting case law).  As "examples," Plaintiff notes that the Court "criticized" her for relying on "speculation," dismissed what it called "[c]onclusory assertions," and found that the Second Amended Complaint was "bereft of well-pleaded facts" to support her claims.  Plaintiff describes this as a "strict approach" that is "the polar opposite of liberal construction."  Pl. Br. 23-24.

Liberal construction of a pro se complaint means recognizing claims despite

"formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). To dismiss a complaint because a pro se plaintiff lacks the drafting skill and legal knowledge of an attorney would indeed be too "strict." But what Plaintiff describes as the "strict approach" taken by the District Court here is not akin to dismissing her claims because of incorrect labels or inapt authority; it is the *minimum* standard imposed by Rule 12(b)(6) that applies to *all* plaintiffs, including those who proceed pro se. *Bing*, 959 F.3d at 618 ("[L]iberal construction [of pro se complaints] does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure. [The plaintiff]'s complaint fails not because of unsophisticated language or the failure to adhere to formalities. It fails because he pled . . . no facts to support his conclusory allegations[.]" (internal citations omitted)); *Taylor*, 296 F.3d at 378 ("[R]egardless of whether the plaintiff is proceeding pro se or is represented by counsel, 'conclusory allegations or legal conclusions masquerading as factual allegations will not suffice to prevent a motion to dismiss.'" (citation omitted); *McDonald*, 610 F.2d at 19 ("Our duty to be less stringent with pro se complaints does not require us to conjure up unpled allegations."). In short, the parts of the District Court's opinion that Plaintiff describes as "reprimand[ing]" and "criticiz[ing]" her do no more than apply the governing legal standards to the facts that she alleged. JA078, JA084, JA060-088,

JA247.

Third, Plaintiff argues that the district court "failed to notice some of the most relevant language from the school newspaper," which she now describes as "thinly veiled potshots" against her. Pl. Br. 24. Plaintiff concedes that the relevant language from these articles is not referenced in the body of her complaint. *Id.* Rather, it appears on two of 68 pages of attached documentary exhibits. JA164, JA168. In one article, an author satirically questions the "sanity and sobriety" of those making claims about discrimination against Black actors at the Oscars because few Caucasians can be seen in attendance at the Black Entertainment Awards. JA163. In another, a fictional cockroach describes where it lives in the school and who its favorite teachers are, shares thoughts on the 2016 U.S. presidential election, and, in response to a question about diversity, notes that cockroaches are underrepresented in student government. JA168. None of the articles in the publication references Plaintiff in any way. JA161-170.

Although courts will liberally construe a complaint "to give a pro se plaintiff a break when . . . he stumbles on a technicality, . . . a lawsuit is not a game of hunt the peanut." *Greer*, 267 F.3d at 727. "[N]either appellate courts nor district courts are 'obliged in our adversary system to scour the record looking for factual disputes.'" *Id.* (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921-22 (7th

Cir. 1993)). As this Court has made clear, "a district court need not construct claims from obscure references in a *pro se* petition" and "there must be more than a 'fleeting reference' to properly present an issue." *Fitz v. Terry*, No. 88-7328, 1989 WL 64157, at *2 (4th Cir. 1989) (citing *Beaudett v. City of Hampton*, 775 F.2d 1274 (4th Cir. 1985)). Plaintiff cites no authority to suggest that the District Court was required to exhaustively examine sixty-four pages of documentary exhibits to glean fragments that could potentially support an unpled factual allegation, however tenuous, and expressly address them in its analysis. Nor does she cite any authority that would empower this Court or the District Court to "rewrite an otherwise deficient pleading to sustain an action" by fashioning new allegations from documentary exhibits. *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020).

Fourth, Plaintiff complains that, when the District Court *sua sponte* afforded her an opportunity to seek leave to amend after all claims had been dismissed, it cautioned her that "any proposed amended complaint will be considered plaintiff's complaint in its entirety, and the court will not review plaintiff's prior filings to glean any misplaced claims." Pl. Br. 24-25 (quoting JA088). According to Plaintiff, this language "disclaim[ed]" an obligation to liberally construe the proposed Second Amended Complaint. Pl. Br. 25. But it is simply true, as a matter of law, that "when a plaintiff files an amended complaint, the amended complaint supercedes the

original, the latter being treated thereafter as non-existent." *Ramirez v. Collier*, 595 U.S. 411, 423, (2022) (citation omitted). Far from "disclaim[ing]" any obligation to liberally construe her pleadings, the District Court extended Plaintiff a courtesy by specifically advising her of a simple rule that any practicing attorney would know.

Fifth, Plaintiff complains that despite its refusal to base its ruling on the sufficiency of a proposed *amended* complaint on the sufficiency of a prior, superseded, complaint, the District Court nevertheless "*did* consider [her] earlier filings in service of ruling against her" by noting "the material factual differences between the dismissed complaint and the proposed amended complaint." Pl. Br. 25. This argument strains credulity. In the cited portion of its order denying leave to amend, the District Court in no way used any of Plaintiff's prior filings "against her." Rather, it simply highlighted the material factual differences between the two complaints to see if any new or different factual allegations would help her overcome dismissal. JA235.

Finally, Plaintiff argues that, in closely examining multiple individual factual allegations in the Second Amended Complaint, the District Court "did not step back and consider the whole complaint." Pl. Br. 25. Plaintiff cites no authority for the rule she advances and fails to explain how a thorough, detailed opinion carefully analyzing multiple factual allegations fails to discharge a district court's obligations

when reviewing a complaint under Rule 12(b)(6).[2]  Moreover, a fair reading of the District Court's thorough opinions demonstrates that it *did* consider the cumulative effect of Plaintiff's factual allegations.  *See, e.g.*, JA071 (holding that "none of these alleged events, taken as true, rise individually or together to the level of Title VI harassment"); JA239 (noting that Plaintiff's "new factual allegations" and "reframing of previously scattered contentions" still fail to state a plausible claim for relief, either "independently or in combination").

In short, the District Court denied Plaintiff leave to amend not because of some legal technicality or her "unfamiliarity with pleading requirements," *Hall*, 935 F.2d at 1100, but because, despite having the benefit of the Court's prior opinion identifying with particularity the fatal defects in her prior complaint, she still failed to provide a "short and plain" statement of facts, Fed. R. Civ. P. 8(a)(2), that, if proved, would sustain a claim for relief.  This Court should affirm this conclusion.

---

[2] Plaintiff specifically complains that the District Court described her allegation that she was subject to unspecified "'nasty racial comments'" as "devoid of factual enhancement" and "[c]onclusory."  Pl. Br. 25. Plaintiff argues that "surely it is . . . reasonable to infer that 'nasty, racially biased comments' . . . were indeed nasty, and racially biased." Pl. Br. 25-26.  In essence, Plaintiff asks this Court to imagine unpled facts that would fit her conclusory assertion that unspecified comments were "nasty" and "racial."

**C.  The District Court Was Solicitous of Plaintiff's Pro Se Status By, Among Other Things, *Sua Sponte* Offering Her the Opportunity to Submit a Proposed Second Amended Complaint After All Claims Had Been Dismissed, Refraining from Entering Final Judgment Until That Opportunity Was Afforded, and Dismissing Several of Her Claims Without Prejudice**

In chastising the District Court for failing to give due consideration to the fact that she was then proceeding pro se, Plaintiff ignores at least three key facts that show the opposite.  First, the Court offered Plaintiff the opportunity to seek leave to amend *of its own motion* after it had already concluded that all claims in the Amended Complaint were subject to dismissal under Rule 12(b)(6).  JA088.  Based on the law and factual allegations before it, the Court could certainly have disposed of the case with finality and had no obligation to proactively offer a chance to seek leave to amend.  Second, the Court refrained from entering judgment against Plaintiff after dismissing all claims in her Amended Complaint.  JA088.  Only when Plaintiff was still unable, on her third try, to provide a "short and plain" statement of facts sufficient to state any plausible claim for relief (and this despite having a roadmap from the Court explaining exactly what was needed to do so) did the Court enter judgment and direct the Clerk to close the case.  JA248-249.  Finally, even though Plaintiff failed to state a viable claim in either the Amended Complaint or proposed Second Amended Complaint, the Court chose to dismiss some of her

claims "without prejudice" and therefore did not completely foreclose the possibility of legal relief.  JA087-088, JA251.  None of these actions was required by law, and all reflect an admirable degree of care and concern for Plaintiff in light of her former pro se status.  Plaintiff's suggestion that the District Court was not properly "solicitous" of her, Pl. Br. 26, is clearly belied by the record here.

## II.  The District Court Properly Denied Leave to Amend on the Basis of Futility Because the Proposed Seconded Amended Complaint Fails to State a Plausible Claim for Relief

As the District Court showed in its 3 January 2022 and 6 July 2022 orders, Plaintiff has not pled facts sufficient to sustain a plausible claim for relief, even if the allegations are accepted as true and all reasonable inferences are drawn in Plaintiff's favor.  Plaintiff's arguments to the contrary in this appeal lack merit and must be rejected.

### A. The Proposed Second Amended Complaint Fails to State a Plausible Title VI Discrimination Claim

As Plaintiff notes, this Court has not recognized the existence of a Title VI claim against an educational institution[3] for "student-on-student racial harassment."

---

[3] Plaintiff makes no argument on appeal that her claims against "Wake County Public School System" (which is not a legal entity) or her Title VI discrimination claims against the individual defendants were improperly dismissed.  Those claims were dismissed "with prejudice" in the District Court's 3 January 2022 order as foreclosed by settled law, regardless of the facts alleged. JA087-088 (dismissing these claims with prejudice); JA066-067 (explaining that Defendant

Pl. Br. 27. But even assuming such a claim exists and should be analyzed, as the District Court suggested, the same way this Court reviews sexual harassment claims under Title IX, JA069, JA236, the factual allegations in the Second Amended Complaint do not support a plausible claim for relief.

To state a Title IX claim against an educational institution, a plaintiff must allege facts that, if proved, would show:

> (1) they were a student at an educational institution receiving federal funds; (2) they suffered harassment that was so severe, pervasive, and objectively offensive that it deprived them of equal access to the educational opportunities or benefits provided by their school; (3) the school, through an official who has authority to address the alleged harassment and to institute corrective measures, had actual notice or knowledge of the alleged harassment; and (4) the school acted with deliberate indifference to the alleged harassment.

*Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 263-64 (4th Cir. 2021). Assuming that

---

"Wake County Board of Education" is a corporate entity capable of being sued but the "Wake County Public School System" is not); JA067-069 (explaining that educational institutions may be held liable under Title VI, but individual school system employees may not). That order was not appealed within the time allowed by Rule 4 of the Federal Rules of Appellate Procedure and is not properly presented here. *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317 (1988) ("But although a court may construe the Rules liberally in determining whether they have been complied with, it may not waive the jurisdictional requirements of Rules 3 and 4 . . . ."). Moreover, even if the dismissal of Plaintiff's claims against "Wake County Public School System" or her Title VI claims against the individual defendants had been timely appealed, the failure to brief such arguments waives them on appeal. *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 604 (4th Cir. 2010) (holding that an issue raised at oral argument on review of district court order denying leave to amend was waived because it was not raised in that party's opening brief).

this is the standard that should apply to Plaintiff's Title VI student-on-student racial harassment claim, only the first of these elements is satisfied by the threadbare and conclusory allegations in the Second Amended Complaint.  JA105.

### 1. Plaintiff Has Not Pled Facts to Establish that She Suffered Harassment So Severe, Pervasive, and Objectively Offensive that It Deprived Her of Access to Educational Opportunities

"[A]n action will lie [against a school board] only for harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit."  *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999) (applying Title IX).  It is not enough to allege mere "teasing and name-calling among school children . . . , even where these comments target differences" in identity.  *Davis*, 526 U.S. at 652; *see also Sneed v. Austin Indep. Scshl. Dist.*, 490 F. Supp. 3d 1069, 1083 (W.D. Texas 2020) (holding that, to satisfy this element, "the harassment must be more than the sort of teasing and bullying that generally takes place in schools" (quoting *Sanchez v. Carrollton-Farmers Branch Indep. Schl. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011)).

In its 3 January 2022 order dismissing all claims, the District Court carefully analyzed the allegations in the Amended Complaint and correctly concluded that, even assuming the truth of the facts alleged and drawing all reasonable inferences in Plaintiff's favor, this element was not met.  JA071-076.  In its 6 July 2022 order

denying leave to amend, the Court painstakingly explained why neither the "further factual details" nor the "new facts" alleged in the Second Amended Complaint altered this analysis. JA236-244.

Plaintiff now makes four main arguments in support of her contention that she pled sufficient facts to support this essential element. None has merit.

First, Plaintiff notes that she alleged her campaign materials were torn down or defaced while those of Caucasian students were left intact. Pl. Br. 29 (citing JA115-116, JA133). Despite some "rewriting and rewording," the District Court noted, the "nucleus of operative facts" on this issue remains the same in both complaints, and "so does the court's analysis." JA237. As the Court aptly explained in its 3 January 2022 order:

> Plaintiff relies on the racial identity of the targets of this vandalism to raise an inference that alleged conduct was 'on the ground of race.' . . . However, without further details regarding the incident from which the court could make reasonable inferences about the causal basis, the allegation that African-American students campaign materials were torn down is "consistent with discrimination . . . [but does not] support a reasonable inference [of racial bias] . . . and leaves the court only to "speculate to fill in the gaps."

JA072 (quoting 42 U.S.C.§ 2000d, *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 586 (4th Cir. 2015), and *Bing*, 959 F.3d at 618).

Second, Plaintiff notes that she alleged other students engaged in unspecified acts of "cyberbullying" of Plaintiff and "label[ed]" her an "angry Black girl," blaming her for "overreacting to a 'technical glitch' and calling it discrimination." Pl. Br. 30 (quoting JA119). The same portion of that Second Amended Complaint states that the specific impetus for these comments was "hostility, resentment, and frustration" on the part of other students that a "re-election" would be held because Defendant Lyons "wanted the elections to be fair." JA119. It further notes that Plaintiff told an OCR investigator that "classmates would whisper about how there was no discrimination" and that the "whole situation was coincidental and being taken out of proportion." JA120. But anger and resentment against Plaintiff based on the perception of other students that she and others had falsely alleged racial discrimination, made a "big deal out of nothing," JA120, and otherwise taken actions that led to a "re-election" cannot reasonably be considered a form of racial harassment.

Third, Plaintiff notes that "two bomb threats were made by students angry about the reelection." Pl. Br. 30 (citing JA122). More specifically, she alleges that students "vented their hostility and resentment in their objection to the re-election requirement with two bomb threats," one on the day after Defendant Lyons

announced the re-election and one ten days later.  JA122.  She does not allege that the bomb threats were racially motivated or that they referenced her or the election.

The District Court correctly concluded that there was no reasonable basis to infer that these bomb threats were "'based on race, color, or national origin' as required for a Title VI claim."  JA075 (citation omitted); *see also* JA238 (concluding that the revised factual allegations "still fail to raise a reasonable inference that the conduct was racially biased").  In response, Plaintiff argues that the alleged connection to the "reelection requirement" raises an inference of racial harassment.  Pl. Br. 33-34.  Again, however, an allegation that other students called in a bomb threat because they were upset about having to repeat an election is not an allegation that the bomb threats were intended to harass any person, let alone Plaintiff, on the basis of race.  Not only does Plaintiff make no such allegation; she specifically alleges a different motivation that does not implicate Title VI at all.

Finally, citing the Oscar Award and "cockroach" stories described above, Plaintiff argues that the April Fool's Day student newsletter made "jokes" at Plaintiff's expense, the "barely hidden subtext" being that her complaints about ballot exclusion were illegitimate.  As noted above, *supra* Section I.B, these stories are not referenced in the body of Plaintiff's complaint but are buried in 68 pages of documentary exhibits.  "[A] lawsuit is not a game of hunt the peanut."  *Greer*, 267

F.3d at 727. In any event, even if Title VI would have required school officials to step in to protect Plaintiff from *racial harassment* by other students, it did not require them to prevent other students from making fun of her for overreacting to innocent events. Even assuming these articles are about her, as Plaintiff now assumes but did not allege in her complaint, they do not support a racial harassment claim.

Plaintiff also fails to state a claim because she does not allege facts to support an inference that severe, pervasive, and objectively offensive harassment "effectively bar[red] her access to an educational opportunity or benefit." *Davis*, 526 U.S. at 633. While she does allege that she experienced two incidents of fainting and had suicidal thoughts,[4] she attributes those effects to the fact that others believed she was "wrong" to believe that the election was tainted by discrimination and blamed her for the "unnecessary repeat campaign requirement." JA135. Title VI does not prevent such harms.

Finally, even if Plaintiff had alleged that all the incidents described above were instances of intentional racial harassment, they fall far short of the high bar that courts have established for severe, pervasive, and objectively offensive harassment.

---

[4] Although Plaintiff does allege that she experienced these things, she offers only a conclusory assertion that "they affected Plaintiff's education and other opportunities" in unspecified ways. JA135. Thus, even if she had clearly alleged they were caused by *racial harassment*, she fails to demonstrate how they "effectively bar[red]" her "access to an educational opportunity or benefit." *Davis*, 526 U.S. at 633.

*Compare Whitfield v. Notre Dame Middle Sch.*, 412 Fed. Appx. 517, 519-20 (3d Cir. 2011) (unpub.) (holding that an African-American plaintiff could not establish "severe and pervasive" racial harassment where one Caucasian student slapped her and spit in her face, a second scratched her arm, a third attempted to throw her backpack out a window, and a fourth told her "if I didn't take a shower I would look like you, black") *with Bryant v. Indep. School Dist.*, 334 F.3d 928, 931 (10th Cir. 2003) (explaining that evidence a school condoned the use of "racial slurs, epithets, swastikas, and the letters 'KKK' inscribed into school furniture" was sufficient to sustain hostile environment claim) *and Sneed*, 490 F. Supp. 3d at 1077 (holding that evidence showing a plaintiff had been called a "n****r" and "f***ing n****r"[5] on a "daily" basis at school as well as being exposed to a noose was sufficient to establish severe, pervasive, and objectively offensive racial harassment).

**2. Plaintiff Has Not Pled Facts to Establish that the Board Had Actual Knowledge of the Alleged Harassment Or Substantial Control Over the Alleged Harassers**

As none of the incidents described in the Second Amended Complaint can fairly be described as "severe, pervasive, and objectively offensive" racial harassment, no Defendant with "authority to address the alleged harassment and to

---

[5] Defendants have altered these words due their deplorable nature.

institute corrective measures" had "actual notice or knowledge" of any harassing student conduct that might trigger a duty under Title VI. *Doe*, 1 F.4th at 263-64. Moreover, Plaintiff's notice arguments rely on speculation and are not supported by well-pled allegations in her complaint.

For example, Plaintiff alleges that her defaced campaign materials were located in "shared areas that administrators walked by every day" and that *"[e]ither* Lyons, Sawyer, [or] Barilich saw the shredded materials *or* some District employees *would have* reported them as required by [Board Policy]." JA137 (emphasis added). But assuming that administrators did walk by those shared areas each day and that at least one of them saw the destroyed materials, there is nothing about destroyed campaign materials that clearly indicates racial harassment. *See supra* Section II.A. Moreover, the allegation that others in a position to intervene "would have" seen the torn-down campaign materials and immediately reported them as incidents of racial harassment had Defendants Lyons and Barilich not seen them is speculative and cannot support a plausible claim for relief. *Doe*, 1 F.4th 257 at 268 (stating that a school must have "actual notice" of alleged harassment and describing actual notice as "an objective inquiry which asks whether an appropriate official in fact received such a report or complaint").

Plaintiff's brief offers cursory and unpersuasive arguments in support of her

position that Defendants had "actual notice" of student-on-student harassment that triggered a Title VI obligation. Pl. Br. 36. For example, Plaintiff argues that she alleged her mother emailed Defendant Lyons to complain that "[t]hese African-American students . . . are currently being blamed for the restart of the entire [election] process." JA125. The problem here is obvious: being on notice that students blamed Plaintiff for the "re-election" is not tantamount to being on notice that Plaintiff was subjected to severe and pervasive racial harassment at school. *See supra* Section II.A.

Plaintiff further argues that Defendants had notice of "harassment" through a news article and because an advocate "directly informed" the Board of "cyberbullying." Pl. Br. 36. But none of the citations to the complaint in this section of Plaintiff's brief support a conclusion that any Defendant was on notice of facts showing that Plaintiff had been subjected to any type of severe, pervasive, and objectively offensive harassment that would implicate Title VI. Rather, those citations support, at most, a conclusion that her mother and her advocate vaguely alleged that Plaintiff had been, in some unspecified way, bullied or harassed. This Court cannot credit conclusory allegations of discrimination or harassment unsupported by well-pled facts. *See, e.g.*, *Bhombal v. Irving Indep. Sch. Dist.*, 809 Fed. Appx. 233, 237 (5th Cir. 2020) (unpub.) ("Allegations of subjective views,

without supporting factual allegations, fail to give rise to an inference of intentional discrimination, much less to an inference of deliberate indifference to discrimination."). Plaintiff fails to state a claim under this element because "only speculation can fill in the gaps," *Bing*, 959 F.3d at 618, as to whether any Defendant was put on notice of *facts* that would support her mother's and advocate's *conclusion* that she was, in some way, "harassed."

Finally, the Second Amended Complaint places heavy emphasis on several anonymous comments made by "unidentified commenters" on an ABC-11 online news article and includes what Plaintiff purports to be the full, reproduced text, of those comments. JA121; JA173-177. While a small number of those comments may fairly be described as racially insensitive, none of the commenters are identified as students over whom the school district could potentially have "substantial control." *Davis*, 526 at 629. Further, even if Plaintiff had alleged all of the ABC11 online commenters were students, the Supreme Court has recently held that online off-campus student speech "will normally fall within the zone of parental, rather than school-related, responsibility" and that courts must be "skeptical" of schools' efforts to regulate it. *Mahanoy Area Schl. Dist. v. B.L.*, 594 U.S. 180, 189-90 (2021) (overturning school discipline for a student's online off-campus speech as violative of the First Amendment and declining to decide whether schools have authority even

over "severe[ly]" harassing off-campus student speech). Plaintiff fails to explain why the anonymous ABC11 comments, only some of which are racially insensitive and none of which directly reference Plaintiff, would not qualify as protected speech even if they were made by students.

### 3. Plaintiff Has Not Pled Facts to Establish that the Board was "Deliberately Indifferent" to Student-on-Student Harassment

To state a hostile environment or harassment claim against a public school district, a plaintiff must allege facts sufficient to establish that the district "act[ed] with *deliberate indifference* to *known* acts of harassment in its programs or activities." *Davis*, 526 U.S. at 633 (emphasis added) (applying Title IX). As this Court has explained:

> *Davis* sets the bar high for deliberate indifference. The point, again, is that a school may not be held liable . . . for what its students do, but only for what is effectively "an official decision by [the school] not to remedy" student-on-student harassment. Thus, it is not enough that a school has failed to eliminate student-on-student harassment, or to impose the disciplinary sanctions sought by a victim. Instead, a school will be liable for student-on-student harassment only where its "response . . . or lack thereof is clearly unreasonable in light of the known circumstances."

*S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty.*, 819 F.3d 69, 76 (4th Cir. 2016) (quoting *Davis*, 526 U.S. at 642, 648) (other citations omitted).

Here, even if Plaintiff had pled facts that could support a conclusion that other

students had subjected her to "severe, pervasive, and objectively offensive" harassment, her complaint is bereft of facts that would support a finding of "deliberate indifference" on the part of Defendant Board.

Little need be added to the District Court's sound analysis of the "deliberate indifference" standard. JA073, JA237, JA240. Briefly, however, there is nothing "clearly unreasonable" about school administrators' decisions to (1) meet with the students whose names were omitted from the student council ballots to explain the situation, JA119, (2) conduct a "re-election" to ensure the election was "fair," JA047, JA119, (3) inform Plaintiff's parent, when she reported in conclusory fashion that Plaintiff had somehow been "harassed," that the school had received no reports of harassment and to ask that Plaintiff or any other concerned students come speak with an administrator "so that we can follow up"; JA118-119, JA185-187, (4) ask the district's Assistant Superintendent for Equity Affairs to conduct an "internal investigation" into Plaintiff's vaguely expressed concerns, JA120, JA144, JA194-200, or (5) share the results of Dr. Trice's investigative report with Plaintiff's advocate upon her request. JA197. In sum, based on the facts that Plaintiff herself has alleged, there is no basis to conclude that the Board was deliberately indifferent in the face of known instances of severe, pervasive, and objectively offensive student-on-student harassment that school officials were in a position to remedy or

prevent.

**B. The Proposed Second Amended Complaint Fails to State a Plausible Title VI Retaliation Claim**

To adequately plead a Title VI retaliation claim against public school district, a plaintiff must allege facts to show "(1) that [she] engaged in protected activity; (2) that [the district] took a material adverse . . . action against her; and (3) that a causal connection existed between the protected activity and the adverse action." *Peters v. Jenney*, 327 F.3d 307, 319 (4th Cir. 2003).

To satisfy the first element, a plaintiff must allege that she "opposed an unlawful . . . practice which [s]he reasonably believed had occurred or was occurring." *Id.* A plaintiff has a "reasonable belief" that a practice is unlawful when she "subjectively (that is in good faith) believes that the practice violates Title VI" and the belief is "objectively reasonable in light of the facts." *Id.* at 321. "The reasonableness of a reporter's belief is measured with reference to "'the severity of the harassment.'" *McCarter v. Univ. of N. Carolina at Chapel Hill,* No. 1:20CV1050, 2024 WL 1142518, at *12 (M.D.N.C. Mar. 15, 2024) (quoting *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 284 (4th Cir. 2015)).

To satisfy the second element, a plaintiff must allege retaliatory conduct that would "suffice to 'dissuade a reasonable [person] from making or supporting a

charge of discrimination.'" *Feminist Majority Found. v. Hurley*, 911 F.3d at 674 (4th Cir. 2018) (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) and applying this analysis in the context of Title IX).

To satisfy the third element, a plaintiff must allege facts to establish "but-for causation." *McCarter*, 2024 WL 1142518, at *12 (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013)). While temporal proximity between the protected activity and retaliatory conduct may be a factor in determining causation, the cases uniformly hold that "such temporal proximity must be *very close*." *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (emphasis added) (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) and applying Title VII retaliation provisions); *see also Maisha v. Univ. of N. Carolina*, 641 F. Appx. 246, 251 (4th Cir. 2016) (unpub.) (holding that a "gap of nearly one year does not provide the temporal proximity needed to establish causation).

Here, the Second Amended Complaint lists the following alleged events as instances of "[r]etaliation":

- Two days after the student council election, Plaintiff's parent received a letter from Defendant Lyons indicating that she had 15 days of absences and reminding her of "laws and policies regarding attendance," which included a rule that students with 15 or more absences cannot participate in extracurricular activities, which would include student council. Plaintiff was still able to participate in the "re-election," however, because her parents reminded school

officials that her absences were in fact excused.  JA151.

- Plaintiff anticipated receiving an International Baccalaureate diploma but did not receive one because an essay she wrote, which was scored by an "unknown individual living in another country" left her "one point shy."  Plaintiff's parent reached out to an "International IB Ombudsman," who eventually "ceas[ed] all communication and referred Plaintiff [to the school]."  JA152.

- About the time of the student council election, two unnamed teachers, neither of whom is alleged to have any knowledge of, let alone a role in, Plaintiff's concerns about the student council election, declined to provide "letters of academic reference" for Plaintiff, and one ignored her in the hallway.  JA152.

- After the election, Plaintiff's grades dropped in some classes "due to [a] concussion" and related absences.  JA153.

- About two years after the election, during her senior year, Plaintiff was "not selected for the Varsity Cheerleading Team," despite having been on the team in the past, and a Junior Varsity student was chosen instead.  JA153.

- Plaintiff "[b]ecame unpopular and unliked suddenly," as students and staff perceived her as one of the "angry Black girls" who "overreacted" and called a "harmless" error "discrimination." JA153.

- A principal at another school refused to allow Plaintiff's parent to attend a meeting with school officials as another parent's advocate and refused to accept a "Limited Educational Power of Attorney" she had provided to authorize her to speak on the other parent's behalf.  JA154.

- Plaintiff's parent was not allowed to bring an advocate with her to a meeting with the school's new principal about "a teacher's discrimination action over her son."  JA154.

- About 11 months after the election, Plaintiff's mother was assigned as a substitute teacher through an online portal, but the assignment was canceled three days later with no reason given.  JA154.

For the reasons set out in the District Court's prior opinions, none of these

allegations states a plausible claim for retaliation in violation of Title VI. JA077-079, JA240, JA242-244. For example, the District Court reasoned that (1) these allegations did not permit reasonable inferences of causal connection between any protected activity and the alleged retaliatory actions; (2) any initial determination that she could not participate in the re-election due to excessive absences was not "materially adverse" since she was indeed able to participate after pointing out that her absences were excused; and (3) to the extent Plaintiff alleged retaliation against her mother, her mother was not the Title VI retaliation plaintiff. *Id.*

There are multiple other reasons Plaintiff fails to state a plausible retaliation claim. For one, Plaintiff has not, in fact, alleged facts to clearly show that she engaged in "protected activity" with respect to the student council election. Plaintiff alleges that, when she became aware that she was omitted from the junior class ballot, she "told Sawyer, with Barilich nearby, that the exclusion '*look[ed] like* discrimination.'" JA118. She also alleges that she and her parents "suspected discrimination." JA118. She does not, however, allege that she was *in fact* omitted from the ballot due to racial discrimination or that she engaged in a protected activity by making such an assertion. Questioning whether discrimination may be present is not an allegation of discrimination.

Even if she had alleged that she was omitted from the junior class ballot

because of her race, such belief would not be "objectively reasonable" in light of the other facts alleged. *Peters*, 327 F.3d at 320. Plaintiff concedes that there were race-neutral explanations for the ballot errors, including technical issues with the online election platform and a student error in submitting an earlier, uncorrected version of the ballots to a Student Council leader, who created online ballots using the incorrect information. JA118. She also concedes that she accidentally "entered candidacy in the Sophomore instead of the Junior category" but emailed a Student Council election official the next day to rectify the error. JA115. And she acknowledges that students of several races were left off the ballot, though she disputes the count provided by school officials because one "Jewish" student was counted as "Caucasian." JA123. Even if Plaintiff subjectively believed she was omitted from the ballot due to racial bias, such belief is not objectively reasonable in light of the other facts alleged.[6] *Cf. Bing*, 959 F.3d at 617-18 (holding that this Court could not "reasonably infer" discriminatory intent from an allegation that an employer searched a pro se plaintiff's background immediately after learning his race because the complaint, even if "liberally construed," lacked "factual allegations that support

---

[6] Plaintiff also points to her allegation that she "had 'generally been vocal against racism at Enloe.'" Pl. Br. 46 (quoting JA111). Having generally "been vocal against racism" is not a protected activity, as it does not constitute opposition to any specific, "unlawful . . . practice" of racial discrimination. *Peters*, 327 F.3d at 320.

such an inference" and would require judicial "conjecture" and "speculation" ).

Further, objecting to harassment by other students is not inherently a "protected activity" under Title VI, because Title VI prohibits retaliation on the part of *educational institutions*, not private parties. Thus, as Plaintiff concedes in her brief, the only way she could possibly base a Title VI "retaliation" claim on her mistreatment *by other students* is if this Court were to follow the same analysis it uses in Title IX retaliation cases and hold that, under Title VI, "an educational institution can be liable for acting with *deliberate indifference* toward *known instances* of student-on-student retaliatory *harassment*." *Hurley*, 911 F.3d at 695 (emphases added).[7] Thus, for all the reason set out in Section II.A above, Plaintiff cannot possibly state a plausible student-on-student retaliation claim here.

Additionally, Plaintiff fails to allege facts that would support an inference that the alleged "retaliatory" conduct may be fairly attributed to or remedied by the

---

[7] As noted above, Plaintiff makes no argument on appeal that her claims against the individual defendants were improperly dismissed. Those claims were dismissed "with prejudice" in the District Court's 3 January 2022 order as foreclosed by settled law, regardless of the facts alleged, and that ruling was not appealed. JA087-088 (dismissing with prejudice); JA067-069 (citing multiple cases holding only educational institutions may be held liable under Title VI, not individual school system employees). Any "retaliation" claims against any of the individual defendants are therefore now foreclosed, as it is long past the time to appeal their dismissal, and Plaintiff has not raised these issues in her brief. *See* Fed. R. Civ. P. 4; *Equal Rights Ctr. v. Niles Bolton Assocs,*, 602 F.3d 597, 604 (4th Cir. 2010). *See generally supra* footnote 3.

Board.  For example, the Board cannot prevent students from choosing not to be friends with Plaintiff because they believed she overreacted to an innocent ballot error.  JA153.  Nor can it control the grading practices of a "unknown individual living in another country" in the International IB program.  JA152.

Plaintiff's brief repeatedly asks this Court to *assume* a causal connection between what she describes as protected activities and retaliatory responses.  She describes these leaps as "reasonable inferences" from the facts alleged when in fact they are pleas for this Court to "speculate to fill in the gaps" and supply the factual predicate for a missing element of her claim.  *Bing*, 959 F.3d at 618; *cf. McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582 (4th Cir. 2015) (holding that an allegation that non-Black decisionmakers hired non-Black applicants may be "consistent" with discrimination but does not, without more, support a "reasonable inference" of discrimination).  For example, Plaintiff argues that, since she was removed from the cheerleading team nearly two years after the 2016 student council election, "a reasonable inference is that the cheerleading coach knew of [her] complaints and . . . sought to preserve team harmony by leaving her off the squad."  Pl. Br. 50.  Setting aside the problem of temporal proximity, this is not a "reasonable inference"; it is a request to "conjure up unpled allegations," *McDonald*, 610 F.2d at 19, to repair a fatally deficient pleading.

Similarly, Plaintiff argues that she alleged experiencing a sudden drop in grades after the election period and further alleged that "one of the teachers who dropped those grades was an English teacher like Barilich." Pl. Br. 50. From the fact that one of the teachers who gave her a disappointing grade taught the same subject as Defendant Barilich, Plaintiff argues that it is a "reasonable inference . . . that Barilich had told this teacher about [her] complaints and that the teacher dropped her grades because of that fact." *Id.* Again, Plaintiff asks this Court to fill in the gaps with speculation after failing, on three tries, to draft a "short and plain" statement including factual allegations that, if true, would sustain each element of her claims. Like the District Court, this Court must decline this invitation to cross the line between liberal construction and "assum[ing] the role of advocate" for a litigant. *Hall*, 935 F.2d at 1110.

### C. The Proposed Second Amended Complaint Fails to State a Plausible Equal Protection / Section 1983 Claim

The District Court carefully evaluated Plaintiff's equal protection claims in both its 3 January 2022 and 6 July 2022 orders and correctly concluded that neither the Amended Complaint nor the proposed Second Amended Complaint stated a plausible claim for relief.

As to the Amended Complaint, the Court concluded that: (1) Plaintiff's Equal

Protection / Section 1983 claims against the individual Defendants in essence rely on a theory of "supervisory liability" for their alleged "indifference" to alleged racial harassment by students; (2) even if the complaint had plausibly alleged that students' negative reactions to Plaintiff were "on the basis of" her race, the facts alleged did not support a conclusion that "defendants' alleged indifference was, in turn, motivated by a discriminatory intent," as is required for any Equal Protection claim; (3) mere "knowledge" of discrimination by students or "negligence" in responding does not provide a sufficient factual predicate for Section 1983 liability; (4) while the complaint includes "conclusory assertions" that Defendants' actions were discriminatory, "it does not contain sufficient facts from which purposeful discrimination can be inferred"; (5) the complaint fails to allege facts that would show the existence of a "widespread pattern of unconstitutional conduct" as required to establish municipal liability on behalf of Defendant Board; and (6) Plaintiff offers at most "speculation" that any of the Defendants' conduct was "premised on [her] race" and therefore purposefully discriminatory.  JA077-087.

As to the Second Amended Complaint, the District Court concluded that any "further factual enhancements" that Plaintiff proposed to add by amendment, such as her generic description of a "6D system – Delay, Disregard, Deceive, Deny, Defend (through legal means), and Dismiss," failed to alter its prior analysis.  JA245-

47.  The Court also concluded that its prior analysis was unaltered by the few new factual allegations that Plaintiff had added, such as those related to alleged racial disproportionality in referrals of students to law enforcement agencies and the allegation, "unmoored in chronology and context," that "some Board [m]embers" once said "[t]hat's just the culture" when discussing "indifference to discrimination" with Plaintiff's mother.  JA247-248.  The District Court got these matters exactly right, and this Court should affirm its decision.  In addition to endorsing the District Court's arguments, Defendants submit the following:

### 1. Plaintiff Fails to State a Plausible Section 1983 Claim Against Defendant Board Because She Has Not Pled Facts to Establish an Unconstitutional Custom, Policy, or "Widespread" Practice That Violated Her Rights

A school board "may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978).  Instead, "[a] plaintiff stating a . . .  claim via § 1983 for violation of the Equal Protection Clause by a school district . . .  must show that the harassment was *the result of* [the Board's] . . . custom, policy, or practice." *Hurley*, 911 F.3d at 700-701 (emphasis added); *see also Monell*, 436 U.S. at 694 (holding that a government entity may be sued under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly

be said to represent official policy, inflicts the injury.").

"It is well settled that 'isolated incidents' of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for purposes of Section 1983." *Lytle v. Doyle*, 326 F.3d 463, 473 (4th Cir. 2003). "Rather, there must be "'numerous particular instances' of unconstitutional conduct in order to establish a custom or practice." *Id.* (citations omitted). Specifically, in this context, a "plaintiff must point to a persistent and widespread practice of . . . officials, the duration and frequency of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference." *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 402 (4th Cir. 2014) (citations and internal quotation marks omitted). "Sporadic or isolated violations of rights will not give rise to *Monell* liability; only 'widespread or flagrant' violations will." *Id.* at 403 (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987)).

In her brief, Plaintiff argues that "the Board was deliberately indifferent to the racial discrimination that [she] suffered," and this "deliberate indifference allows this Court to 'infer[]' an 'official policy' on the part of the Board." Pl. Br. 54 (quoting *Wellington v. Daniels*, 717 F.2d 932, 935 (4th Cir. 1983)). As previously explained, "*Davis* sets the bar high for deliberate indifference," and Plaintiff simply has not

pled facts that would come anywhere close to establishing deliberate indifference to "severe, pervasive, and objectively offensive" racial discrimination. *S.B.*, 819 F.3d at 76. *See Supra* Section II.A.

But even were she to clear this hurdle, she must also allege facts that would support a conclusion that the Board's deliberate indifference was not an "isolated" incident affecting Plaintiff, but rather an established "custom or practice" of the Board. *Lytle*, 326 F.3d at 473. And she must also allege facts to show that this custom or practice was the "'moving force' behind the injury alleged." *See Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).

Here, Plaintiff has not alleged facts that would support a reasonable inference of any "custom" or "widespread practice" of deliberate indifference, much less one that was the "moving force" behind her injury. *Id.* Perhaps the closest Plaintiff comes to meeting this burden is her allegation that, "when discussing the issue of indifference to discrimination . . . , some Board [m]embers informed Plaintiff's parent, 'That's just the culture.'" JA140. But this single alleged statement is extremely vague and does not come close to establishing the existence of any specific custom or widespread practice of constitutional violations. *Lytle*, 326 F.3d at 473. To meet her burden, Plaintiff must allege, among other things, "'*numerous particular instances*' of unconstitutional conduct" on the part of its employees from

which a "custom or practice" that may be attributed to the Board may be inferred. *Lytle*, 326 F.3d at 473 (emphasis added). The alleged "that's just the culture" statement does not even reference a single isolated instance of unconstitutional conduct, let alone establish a widespread pattern. Thus, Plaintiff fails to state an Equal Protection claim against the Board.

Plaintiff also cites in her brief two online articles to support her claim of a custom or practice. However, neither of these articles are included in the proposed Second Amended Complaint, either as allegations or exhibits, and they therefore may not inform this Court's decision.[8] *CACI Intern., Inc. v. St. Paul Fire and Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009) (explaining that, in ruling on a motion to dismiss under Rule 12(b)(6), courts may only "consider the complaint itself and any documents that are attached to it"). In any event, neither article shows the "numerous particular instances of unconstitutional conduct" required to establish a policy or custom of deliberate indifference. *Lytle*, 326 F.3d at 473.

---

[8] Were online articles about the school system valid sources of information for this Court, it might also consider such articles as "Wake County Public School System Doubles Down on Equity," by Kaitlyn Shepherd, https://www.johnlocke.org/wake-county-public-school-system-doubles-down-on-equity/ or "Wake school board approves equity policy in an effort to improve outcomes for non-white or disadvantaged students," https://www.wral.com/story/wake-school-board-approves-equity-policy-in-an-effort-to-improve-outcomes-for-non-white-or-disadvantaged-students/20580285/, among others.

For all these reasons, and for the reasons stated by the District Court, Plaintiff fails to allege a plausible Equal Protection claim against the Board.

### 2. Plaintiff Fails to State a Plausible Equal Protection Claim Against Any Individual Defendant

"To state an equal protection claim for deliberate indifference to known student-on-student . . . harassment," Plaintiff must show (1) "she was subjected to discriminatory per harassment," (2) "the school administrator responded to the discriminatory peer harassment with deliberate indifference, i.e. in a manner clearly unreasonable in light of known circumstances," and (3) "the school administrator's deliberate indifference was motivated by a discriminatory intent." *Hurley.*, 911 F.3d at 702-03 (applying Title IX).

In her brief, Plaintiff argues that she was "subjected to discriminatory peer harassment" and "that several individual defendants knew about the harassment and responded with deliberate indifference." Pl. Br. 52. One fatal problem with this argument, as previously discussed, is that Plaintiff fails to plead facts sufficient to support a conclusion that any school official responded to severe, pervasive, and objectively offensive discriminatory acts with "deliberate indifference, *i.e.*, in a manner clearly unreasonable in light of known circumstances." *Hurley*, 911 F.3d at

702; *see also* Section II.A.3, *supra*. All of Plaintiff's equal protection claims collapse under the weight of this defect.

Another fatal flaw is that, unlike discrimination claims brought under Title VI, an Equal Protection claim must be based on facts that would support a conclusion that the official's deliberate indifference was specifically "motivated by a discriminatory intent" to state a claim for relief. *Hurley.*, 911 F.3d at 702-03 (citing *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) ("Because there is no theory of respondeat superior for constitutional torts, a plaintiff must plead that each . . . defendant has violated the Constitution. In the equal protection context, this means showing that the supervisor . . . intended to discriminate on the basis of a protected class.").

Here, Plaintiff fails to allege *any* facts against *any* Defendant that would sustain a reasonable inference that the Defendant's "deliberate indifference" (assuming that is shown) was "motivated by a discriminatory intent." *Id.* at 703.

Plaintiff argues that Defendant Lyons (1) "ignored the repeated racial harassment both online and on campus"; (2) "made the situation worse by dismissing ballot exclusion as obviously . . . a mistake and mandating the reelection"; (3) "said he had not received any reports of harassment immediately after [Plaintiff]'s mother informed him that [Plaintiff] was being harassed"; and (4) "condoned the publishing

of the newspaper and even participated in one of the articles." Pl. Br. 52 (internal quotation marks and citations omitted). At most, these characterizations of Plaintiff's cursory allegations might support a claim that Defendant Lyons could have done more to make himself aware of and successfully address Plaintiff's concerns. But negligence is not a constitutional tort, and the Supreme Court has cautioned that courts should "refrain from second-guessing" the responses of school administrators to alleged student misconduct. *Davis*, 526 U.S. at 648. Even if this Court were to fully credit Plaintiff's characterization of the factual allegations in her complaint, there is simply no basis to infer that Defendant Lyons was motivated by racial animus.

The arguments and allegations related to Defendants Sawyer, Barilich, and Price-O'Neill are weaker still. Pl. Br. 52-53. Plaintiff generally restates her conclusory allegations that these defendants were "aware" of and "ignored" racial harassment against Plaintiff. Pl. Br. 52-53. But without factual enhancements to support them, these "naked assertions," *Twombly*, 550 U.S. at 557, and "conclusory statements," *Iqbal*, 556 U.S. 662, 678, do not state a claim for relief, especially in the absence of any facts that would support a reasonable inference of intent to engage in purposeful racial discrimination.

As to Defendants Merrill, Connelly, and Barnes, Plaintiff argues that they "failed to enforce internal policies requiring anti-discrimination training and the reporting of complaints." Pl. Br. 53. But as the District Court aptly noted, "Defendants' policies . . . do not set the standards" for legal liability here. JA239-240. And again, there are no factual allegations to support a reasonable inference of discriminatory intent.

Finally, with respect to the other twelve individual defendants, Plaintiff offers no arguments at all in her brief – as to Equal Protection or any other claim. The District Court's decision to dismiss all claims against these Defendants should be upheld for the reasons it has provided. JA068, JA080-081, JA245-246. *See also Equal Rights Ctr.*, 602 F.3d at 604 (holding that issue raised at oral argument on review of district court order denying leave to amend was waived because it was not raised in that party's opening brief).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court affirm the District Court's order and judgment denying Plaintiff's motion for leave to file a Seconded Amended Complaint as futile and directing the Clerk to close this case because all claims had previously been dismissed.

Respectfully submitted, this the 28th day of June 2024.

THARRINGTON SMITH, L.L.P.

*/s/ Neal A. Ramee*
Neal A. Ramee, N.C. Bar No. 31745
Joshua E. Renz, N.C. Bar No. 57536
150 Fayetteville Street, Suite 1800
Post Office Box 1151
Raleigh, North Carolina   27602-1151
Telephone: (919) 821-4711
E-mail:   nramee@tharringtonsmith.com
                jrenz@tharringtonsmith.com

*Attorneys for Defendants-Appellees*

**OPPOSITION TO REQUEST FOR ORAL ARGUMENT**

Defendants oppose Plaintiff's request for oral argument.  At this point, this case has been thoroughly briefed multiple times before the District Court and twice before this Court, including one round of informal briefing and another round of formal briefing following the appointment of appellate counsel for Plaintiff.  All issues have been thoroughly analyzed in writing and are ripe for decision.  Little would be gained from oral argument, but oral argument would impose substantial costs on the Defendants and consume valuable judicial resources.

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,698 words, excluding portions exempted by Rule 32(f). This brief complies with the typeface and type style requirements of Rules 32(a)(5) and (6) because it contains proportionally spaced typeface in Times New Roman 14-point font.

This the 28th day of June 2024.

THARRINGTON SMITH, L.L.P.

/s/ Neal A. Ramee
Neal A. Ramee, N.C. Bar No. 31745
Joshua E. Renz, N.C. Bar No. 57536
Tharrington Smith, L.L.P.
150 Fayetteville Street, Suite 1800
Post Office Box 1151
Raleigh, North Carolina 28602-1151
Telephone: (919) 821-4711
Fax: (919) 829-1583
E-mail:     nramee@tharringtonsmith.com
                 jrenz@tharringtonsmith.com
*Attorneys for Defendants-Appellee*

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that a copy of the foregoing **Corrected Response Brief of Defendants-Appellees** was electronically filed with the Clerk of the Court using CM/ECF and served this day via United States mail, postage prepaid, addressed to the following:

> Alexander G. Siemers
> Latham & Watkins, LLP
> 555 Eleventh Street, NW, Suite 1000
> Washington, D.C. 20004
> *Counsel for Appellant*

This the 28th day of June 2024.

> THARRINGTON SMITH, L.L.P.
>
> /s/ Neal A. Ramee
> Neal A. Ramee, N.C. Bar No. 31745
> Joshua E. Renz, N.C. Bar No. 57536
> Tharrington Smith, L.L.P.
> 150 Fayetteville Street, Suite 1800
> Post Office Box 1151
> Raleigh, North Carolina   27602-1151
> Telephone: (919) 821-4711
> Fax: (919) 829-1583
> E-mail:      nramee@tharringtonsmith.com
>                  jrenz@tharringtonsmith.com
> *Attorneys for Defendants-Appellees*